HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY REICHERT, individually and on behalf of all other similarly situated,

Plaintiff,

v.

KEEFE COMMISSARY NETWORK, L.L.C. d/b/a Access Corrections; Rapid Investments, Inc., d/b/a Rapid Financial Solutions, d/b/a Access Freedom; and Cache Valley Bank,

Defendant.

CASE NO. C17-5848RBL

ORDER DENYING MOTIONS TO COMPEL ARBITRATION

THIS MATTER is before the Court on Defendants Rapid Investments, Inc. and Cache Valley Bank's Motion to Compel Arbitration [Dkt. #36] and Defendant Keefe Commissary Network, LLC's Motion to Compel Arbitration and to Stay or Dismiss Plaintiff's Claims [Dkt. #40]. Oral argument is unnecessary.

The front and center issue in these two motions is whether a binding contract, including a mandatory arbitration clause, was formed under the circumstances of this case. The Court is persuaded by the evidence that one was not.

# I. FACTS

Plaintiff Reichert was arrested on October 21, 2016 by a Kitsap County Sheriff's Deputy. Upon arrest, the deputy confiscated $176.77 in cash from him. Reichert was released at 5:00 a.m. the next day. Instead of receiving cash, Reichert was handed an "AccessFreedom Card"—a debit card issued by Defendants Cache Valley and Rapid, pursuant to a contract between Kitsap County and Keefe. Reichert was not provided with any paperwork explaining the Card, or given any oral explanation of its terms. When Reichert asked the jail officer for his cash, he was told "oh, you don't get your cash back, you get a debit card." Declaration of Jeffrey Reichert [Dkt. #47 at ¶12].

Reichert did not request or apply for the Card. He never agreed to receive the Card. He was not given any documentation showing how much had been taken from him during his arrest, or how much was loaded onto the Card. No one explained how to access his money, that additional fees applied if he did not access it within 72 hours, or that he would lose nearly 10% of his cash to fees. He did not sign any document agreeing to the Card or its terms. Reichert had no opportunity to reject the Card (or even to affirmatively accept it).

The moving defendants argue that by accepting and using the Card he received, Reichert agreed to the terms contained within the Cardholder Agreement. Reichert "accepted the offer" to use the Card (and actually used it), thus forming a contract. They argue that although Reichert claims he did not receive a copy of the Cardholder Agreement when he was released, the back of the Card provides Rapid's website, where those terms and conditions may be found.

Moreover, they claim the contract contains an arbitration clause, including a delegation clause, giving the arbitrator (rather than the court) the power to decide questions of arbitrability in the first instance. They claim that in the Ninth Circuit, delegation clauses are to be enforced,

unless there is a challenge specific to the delegation clause. Because Reichert asserts no such challenge, they claim, the delegation clause should be enforced.

## II. DISCUSSION

The parties agree that Washington law governs the contractual provisions at issue, including contract formation.

A contract is a legally enforceable promise or set of promises. In order for a promise or set of promises to be legally enforceable, there must be mutual assent and consideration. Restatement (Second) of Contracts § 1 and § 3 (1981); *Corbit v. J.I. Case Co.,* 70 Wn. 2d 522 (1967). In order for there to be mutual assent, the parties must agree on the essential terms of the contract, and must express to each other their agreement to the essential terms. *Yakima County (West Valley) Fire Protection District v. Yakima*, 122 Wn. 2d 371, 388 (1993).

Reichert argues that he did not receive the Cardholder Agreement, he could not and did not agree to it. Moreover, he was not given a choice to receive his confiscated money or a check for the full amount. He argues there is no contract; or meeting of the minds. Without a contract, there is no Arbitration Agreement, no Arbitrator, and no Delegation of Power to an Arbitrator to decide the question of arbitrability.

Several cases around the country provide useful insight into this precise question. The Northern District of Georgia, interpreting Georgia contract law, held that use of a prepaid ATM card received from a jail was *not* binding consent to the terms of an arbitration agreement, even when the plaintiff had received a Cardholder Agreement. *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1364 (N.D. Ga. 2015). The *Regan* court reasoned:

> Unlike in [other cases finding consent], Plaintiff here did not make an application for the Card, he was not offered a line of credit that he could choose to use or not to use, he did not receive the Cardholder Agreement in the same envelope as the

|   | Card, and he had not used the card for a long period of time and made payments on the Card. Analogizing to cases containing these facts is not persuasive. |
|---|---|
| 1 | |
| 2 | |
|   | Defendant's cited authority is even less persuasive due to another distinguishing factor: Plaintiff received the Card while he was being discharged *from jail, i.e. from a condition of absence of liberty of choice which Defendant reasonably could have anticipated.* |
| 3 | |
| 4 | |

*Id.* (emphasis in original). In *Regan*, the court denied Defendant's motion to compel arbitration and proceeded to trial on the issue of whether a contract had been formed.

In *Pope v. EZ Card & Kiosk, LLC*, the court addressed similar issues. 2015 WL 5308852 (S.D. Fla. Sept. 11, 2015). *Pope* determined arbitration was proper despite the fact the plaintiff "never assented to any terms of contract with Defendants." *Pope v. EZ Card & Kiosk LLC*, No. 15-61046-CIV, 2015 WL 5308852, at *1 (S.D. Fla. Sept. 11, 2015). While the plaintiff did not receive any agreement, terms, or conditions, he affirmatively opted to accept a debit card, rather than a check, when he was released from jail. The form the plaintiff signed noted the fees associated with the card and his option of receiving a check, instead. *Pope* distinguished *Regan* because Regan was not given an opportunity to reject the card, was not given a cardholder agreement with the card, was not told of fees in his discharge paperwork, and did not sign the cardholder agreement.

Finally, in a Ninth Circuit case, *Brown v. Stored Value Cards, Inc.*, the plaintiff did not receive the paperwork explaining the terms associated with the debit card, and was unaware of the arbitration clause. No. 3:15-CV-01370-MO, 2016 WL 755625 (D. Or. Feb. 25, 2016). The court denied defendants' motion to compel arbitration, because the plaintiff could not have known about the terms and, even though she used the card, her usage was not a meaningful choice because she was forced to interact with defendants if she wanted to access her cash. Courts have compelled arbitration for disputes arising from jail-issued debit cards only where the

jail offered a choice to the arrestee to receive a check or the card and the arrestee affirmatively chose the card. *See Pope*, 2015 WL 5308852 at *3.

Defendants' practices here are substantially similar to those at issue in *Regan* and *Brown*, and there is no arbitration agreement to enforce. All contracts, including those to arbitrate disputes, must have mutual assent, and Defendants' "contract" to arbitrate is unenforceable and unconscionable under Washington law. Defendants' motions to compel are **DENIED**.

Defendant Keefe Commissary Network LLC's Motion to Stay or Dismiss Plaintiff's Claims [Dkt. #40] is **DENIED**. Reichert's claims are not couched in the language of contract law. Rather, they emanate from the U.S. Constitution (Fifth Amendment); Federal statutory law (Electronic Fund Transfer Act, 15 U.S.C. § 1693; State law (Washington Consumer Protection Act, RCW § 19.86); and common law (Conversion and Unjust Enrichment). Nothing before this Court persuades it to dismiss this Complaint. It should be noted, however, that nothing before the Court leads it to believe a class action is the best way to deal with this dispute. The analysis of the three prior cases demonstrate a clear fork in the road between valid contract (not actionable) and no contract (actionable). This is just a cautionary tale for now. The Court remains skeptical on the question of class status.

IT IS SO ORDERED.

Dated this 1st day of May, 2018.

Ronald B. Leighton
United States District Judge