UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY REICHERT, individually and on behalf of all other similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>KEEFE COMMISSARY NETWORK, L.L.C., d/b/a Access Corrections; Rapid Investments, Inc., d/b/a Rapid Financial Solutions, d/b/a Access Freedom; and Cache Valley Bank,<br><br>Defendants. | CASE NO. C17-5848RBL<br><br>ORDER DENYING MOTIONS TO COMPEL ARBITRATION<br><br>DKT. ## 104 & 106 |

THIS MATTER is before the Court on the Defendants' Motions to Compel Arbitration of Plaintiff Gary Moyer's Claims [Dkt. #104, 106]. The Court has reviewed the parties' materials, its prior Order Denying Motion to Compel Arbitration [Dkt. #53] (re: Jeffrey Reichert), and the Order on Motion for Class Certification [Dkt. #87]. Like Mr. Reichert, Moyer received a pre-loaded debit card ("Card") as he was released from detention to reimburse him for cash that had been confiscated when he was admitted. The only difference between Mr. Reichert and Mr. Moyer is that Moyer received his Card along with a two-page "Cardholder Terms and Conditions" document.

1    The Court **DENIES** the Motions for the reasons recited in the Court's prior Order

2    Denying Motion to Compel Arbitration. Dkt. # 53. The facts and circumstances of Gary Moyer's

3    claims against the defendants are identical in all material respects to those of Jeffrey Reichert.

4        A defendant seeking to enforce an arbitration clause in a contract must first establish the

5    existence of a valid and enforceable contract. It is "axiomatic that '[a]rbitration is a matter of

6    contract and a party cannot be required to submit any dispute which he has not agreed so to

7    submit.'" *Sanford v. Member Works, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T*

8    *Tech. Inc. v. Commc'n Workers of Am.*, 457 U.S. 643, 648 (1986)). As this Court noted in

9    denying Defendants' motions to compel arbitration of Plaintiff Jeffrey Reichert's claims:

10           The front and center issue in these two motions is whether a
             binding contract, including a mandatory arbitration clause, was
11           formed under the circumstances of this case.

12   Dkt. # 53, p. 1, lns. 20-22.1 Put simply, "[w]ithout a contract, there is no Arbitration Agreement,

13   no Arbitrator, and no Delegation of Power to an Arbitrator to decide the question of

14   arbitrability." *Id.*, p. 3, lns. 14-16.

15       When Mr. Moyer was released from Kitsap County Jail, he was required to receive his

16   confiscated funds on Defendants' fee-laden debit card. There was no other option provided to

17   him. Mr. Moyer, like Mr. Reichert, "did not request or apply for the Card." *Id.*, p. 2, ln. 10. He

18   "never agreed to receive the Card." *Id.* And, like Mr. Reichert, "[h]e did not sign any document

19   agreeing to the Card or its terms" and "had no opportunity to reject the Card (or even to

20   affirmatively accept it)." *Id.* This Court already properly concluded that "[a]ll contracts,

21   including those to arbitrate disputes, must have mutual assent" and that no enforceable contract

22   bound Mr. Reichert to arbitrate his claims. *Id.*, p. 5, lns. 4-6.

23

24

| 1 | The mere fact that Mr. Moyer received the "Cardholder Terms and Conditions" as he was being released does not change the outcome. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014). Here, the front of the Card given to Mr. Moyer stated, "ATTENTION! This card has already been activated!" Dkt. # 104-1, Ex. 1. The attached document containing the "Cardholder Terms and Conditions" mostly contains a sea of fine print with the small heading "CARDHOLDER AGREEMENT" in the upper corner. Dkt. # 104-1, Ex. 2. The only prominent text in the document explains how to register the card, how to avoid fees, and congratulates the reader on "your new debit card!" *Id*. Only on the back of the Card itself, in small print, is the reader informed that "By accepting and or using this card, you agree to the Account Agreement." Dkt. # 104-1, Ex. 1.

Every prominent notification on the Card and the attached documents suggests that the Card had *already* been accepted by Mr. Moyer. Such statements do not communicate that there is an offer on the table—indeed, they contradict themselves. Even if Mr. Moyer read the statements on the Card and document (which is highly doubtful), it is far from obvious how he could reject a pre-activated card; if he simply did nothing, the Card would begin incurring fees.

//
//
//
//
//
//

1 | These contradictions, combined with the coercive manner in which the Card was distributed,
2 | preclude the possibility of contract formation.
3 |     IT IS SO ORDERED.
4 |     Dated this 30th day of October, 2918.

*[signature: Ronald B. Leighton]*

Ronald B. Leighton
United States District Judge