The Honorable Benjamin H. Settle

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

9

| | |
|---|---|
| JEFFREY REICHERT and GARY MOYER, both individually and on behalf of all others similarly situated, | NO.  3:17-cv-05848-BHS |
| Plaintiffs, | PLAINTIFFS' UNOPPOSED MOTION: |
| v. | (1) FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT WITH RAPID FINANCIAL AND CACHE VALLEY BANK; |
| KEEFE COMMISSARY NETWORK, L.L.C. d/b/a ACCESS CORRECTIONS; RAPID INVESTMENTS, INC., d/b/a RAPID FINANCIAL SOLUTIONS, d/b/a ACCESS FREEDOM; and CACHE VALLEY BANK, | (2) FOR APPROVAL OF WRITTEN CLASS NOTICE; |
| Defendants. | (3) TO ESTABLISH A PROCESS TO APPOINT NOTICE AND CLAIMS ADMINISTRATOR AND CONSIDER PUBLISHED NOTICE PACKAGE; AND |
| | (4) TO ESTABLISH A FINAL SETTLEMENT APPROVAL HEARING AND PROCESS |
| | **Note on Motion Calendar: August 22, 2023** |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC.
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

### I.  RELIEF REQUESTED

With the assistance of mediator Lou Peterson, Plaintiffs Jeffrey Reichert and Gary Moyer, the class representatives in this certified class action, reached an up to $11,600,000 settlement with the two remaining defendants, Rapid Investments, Inc. and Cache Valey Bank ("Defendants").  *See Appendix 1* ("*App. 1*") and *App. 2* (addendum to Settlement Agreement) (collectively, the "Settlement Agreement").  Under the Settlement Agreement, members of the national and Washington State Subclass (collectively "Class Members") will be entitled to a claim of $15.00 *plus* up to three times the actual fees they paid.  It is anticipated that the Settlement will be able to pay all claims at this level, even after the payment of attorney fees, costs, and cost of notice and administration.  With respect to $11,000,000 of the $11,600,000, any remaining funds will be subject to a *cy pres* distribution with no reversion back to the Defendants.[1]  Plaintiffs believe this is an extraordinary recovery for the class.  It was reached after nearly six years of hard-fought and grinding litigation, including three trips to the Ninth Circuit Court of Appeals.  *See Reichert v. Rapid Invs., Inc.,* 56 F.4th 1220 (9th Cir. 2022); *Reichert v. Rapid Invs., Inc.*, 2020 U.S. App. LEXIS 33219 (9th Cir. 2020); *Reichert v. Keefe Commissary Network, LLC*, 2019 U.S. App. LEXIS 28264 (9th Cir. 2019).

In accordance with Federal Rule of Civil Procedure 23(e), Plaintiffs request the Court to:

(a)    preliminarily approve the Settlement Agreement (*App. 1* and *App. 2*);

(b)    approve the short-form "common language" mailed notice (*App. 3*) and long-form formal notice (*App. 4*);

---

[1]  The original agreement called for a settlement fund of $11,000,000. *See App. 1*. After this agreement was reached, Defendants discovered that class data previously provided to Class Counsel failed to include some class members.  Defendants provided updated data, and Class Counsel negotiated a $600,000 reversionary addendum to the nonreversionary $11,000,000 to provide a cushion to account for those additional class member payments that may be used if and as needed.  *See App. 2*.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT ETC. – 1
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

(c)  establish a process for the appointment of a notice and claims administrator ("Notice and Claims Administrator") and approval of published notice materials; and

(d)  establish a final settlement approval hearing and process.

A proposed order is submitted with this motion, which is not opposed by Defendants.

## II.  OVERVIEW

When persons are arrested and detained, detention facilities confiscate their personal property, including cash. That money is held in trust until they are released from custody. Historically, facilities returned the money in cash or with a check. Some facilities, however, require persons being released to receive the money through prepaid debit cards ("release cards") with various associated fees. *See generally* Dkt. No. 147, p. 2; *Reichert*, 56 F.4th at 1224-1225.  This class action challenged the legality of the release cards issued through Defendants Keefe, Rapid Investments, Inc., and Cache Valley Bank and the terms and fees imposed by the cardholder agreement. The gravamen of the case is that Defendants lacked a contractual right to charge fees to Class Members, and that violated the Electronic Funds Transfer Act and various state laws.

This Court certified two classes: (1) a national class with claims under the Electronic Fund Transfer Act against Rapid and Cache Valley, and (2) a Washington Subclass with a claim brought under the Washington Consumer Protection Act and claims for conversion, unjust enrichment, and illegal taking against Rapid, Cache Valley and Keefe.  The action against Keefe settled, with the Court approving the class settlement on November 14, 2022.[2] Dkt. No. 179. The case proceeded against Defendants Rapid and Cache Valley.  On December 30, 2022, the Ninth Circuit affirmed this Court's

---

[2]  The claims raised against Defendant Keefe involved six Washington facilities where Keefe signed agreements to provide release cards Those facilities are Kitsap County Jail, Grays Harbor County Jail, Clark County Jail, Grant County Jail, Sunnyside Jail and Wapato City Jail (hereafter "Six Keefe Facilities").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 2
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

denial of Defendants' motion to compel arbitration. *Reichert*, 56 F.4th at 1231. Upon remand, the parties proceeded to draft cross-motions for summary judgment, *see* Dkt. No. 194, while simultaneously entering into a prolonged mediation process with Mediator Peterson.

While the initial mediation session failed on January 11, 2023, Mediator Peterson continued to doggedly follow up over the next month and a half until an agreement was reached in principle on February 23, 2023. That agreement was subsequently negotiated and codified in the long-form Settlement Agreement. *App. 1*. Under the terms of that Settlement Agreement, Defendants Rapid and Cache Valley Bank agreed to pay $11,000,000 to resolve the claims against them.

After that agreement was reached, Defendants discovered that the class data previously produced during discovery omitted some individuals who fell within the definition of the class. Defendants provided updated data to Class Counsel and a new round of negotiations commenced over an additional payment by Defendants to account for new class members with claims. The parties eventually arrived at an addendum to the original agreement. Under the addendum, Defendants agreed to make up to an additional $600,000 available for payment of claims if the original $11,000,000 is insufficient to pay all class claims[3] at 100% after payment of fees, costs, notice costs, incentive awards, and administration costs.

As detailed below, Class Counsel estimates that this will be sufficient to pay all claimants a minimum award of $15.00 *plus* three times the fees they were charged, even after the payment of attorney fees, costs and notice/administration costs. This settlement is more than fair and reasonable; it is an outstanding recovery for the class that should be preliminarily approved.

---

[3] As noted above, a "claim" is defined as a minimum award of $15 *plus* three times the fees the class member paid on release card.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 3
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

### III. EVIDENCE RELIED UPON

Plaintiff relies upon the Declarations of Richard E. Spoonemore and Cameron R. Azari.

### IV. FACTS AND PROCEDURAL HISTORY

The underlying facts and procedural history are detailed in the Court's Order Denying Defendants' Motions to Compel Arbitration, Dkt. No. 147, pp. 2-9. *See also Reichert*, 56 F.4th at 1224-1225 (affirming denial of the motion to compel arbitration).

Initial class notices were provided by mail to over 700,000 class members (of which 573,206 were deliverable), email (where available) and a nationwide publication and notice plan. *See* Dkt. No. 155, pp. 10-17 (outlining notice plan); Dkt. No. 159 (approving notice plan); Declaration of Cameron R. Azari, ¶¶10-38 (verifying implementation of notice plan). The deadline to opt-out expired on April 25, 2022, with 11 class members electing to do so. Azari Decl., ¶39.

### V. OVERVIEW OF THE SETTLEMENT AGREEMENT

This "Overview" section provides a summary of the key terms of the proposed Settlement Agreement. The "Law and Argument" section of this brief then addresses why the Court should preliminarily approve the Settlement Agreement and Order procedures for processes related to notice, claims, opt-outs, objections and final approval.

**A.    Rapid and Cache Valley Bank Agree to Pay Up to $11,600,000**

Under the terms of the Settlement Agreement, Defendants agree to pay up to $11,600,000. *App. 1*, §§ 1.21, 8. Of this sum, $11,000,000 will be paid into a qualified settlement fund and will be used to make payments to (1) all class members who file valid claims, (2) attorney fees and costs payable to class counsel, (3) case contribution awards to Plaintiffs, and (4) costs of providing the original notice, in addition to the settlement notice and claims administration for the Settlement. *App. 1*, § 8.2. Defendants also agreed to pay up to an additional $600,000 if needed to pay claims in full. *App. 2*.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT ETC. – 4
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**B.    Notice to Class Members**

Class Members will be provided notice of the proposed settlement, and the right to make a claim, opt-out, and comment or object to the settlement. *App. 1*, § 2.2. Notice will take a variety of forms. Notice will be mailed to Class Members where Class Counsel, Defendants, or the Claims and Notice Administrator are able to secure a mailing address. In addition, Class Counsel obtained some email addresses during the initial notice process which can be used to supplement notice. Finally, notice will also be published and advertised under a plan to be proposed by Class Counsel and the Claims and Notice Administrator.[4] These notices will contain information on how to obtain the long-form notice by a phone call, letter, or link to a webpage. The notices and/or links within the notices will also allow Class Members to file a claim, which can also be done online, by phone, or by mail.

Class data provided during discovery was obtained when Class Members received their release cards. That data was entered by facilities and submitted to Defendants, who tracked the payments and fees for the cards. The data received from facilities was inconsistent, but sufficient addresses were obtained to mail approximately 700,000 notices. Of that number, 573,206 were deliverable. Many card recipients were incarcerated more than once and received more than one release card. A database has been developed to use this information to determine the amount of fees charged to each individual, regardless of the number of cards issued to that person. After verifying their identity during the claims process, the class members will be mailed a check under the distribution plan described below.

**C.    Distribution Plan**

The payment for each eligible Class Member is determined as follows:

---

[4] The contours of this plan are not yet set. Class Counsel, in the proposed Order, sets forth a process under which the exact plan will be proposed to the Court in advance of commencing notice. *See* VI, B, *below*.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 5
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

*First*, the following payments will be reserved or made from the settlement funds: (1) costs of providing notice, both initial and settlement, and other expenses to administer the settlement, (2) attorney fees and costs awarded by the Court, (3) taxes and accounting expenses for the qualified settlement account containing the settlement funds, and (4) case contribution awards, if awarded by the Court. The amount remaining after these disbursements will be available to pay claims made by eligible Class Members. *App. 1*, § 9.1. As provided in the Settlement Agreement, up to an additional $600,000 is available from Defendants if needed to pay claims in full.

*Second*, each Class Member's share of the available settlement funds shall be calculated as follows: (1) Class Members will be entitled to make a claim in the sum of $15.00 *plus* (2) an additional amount equal to three times the fees incurred on eligible release cards received by the Class Member. *App. 1*, § 9.2. Class Members who participated in the Keefe Settlement and received a $10 payment plus 3 times the amount of their fees, will receive an additional five dollars without making a further claim request. *Id*. If insufficient funds exist to pay all Class Members at $15 plus three times the fees they paid out of the $11,000,000 fund, then Defendants will deposit up to an additional $600,000 as needed until that payment level is reached. In the unlikely event that all of the additional funds are used and Class Members still have not been paid at 100%, then each Class Member's claim will be paid on a *pro rata* basis with all other claimants. *Id*.

*Third*, any money remaining from the $11,000,000 settlement fund after payment of the claims to eligible Class Members shall be paid to one or more *cy pres* recipients approved by the Court. *App. 1*, § 9.4.

If approved (and in return for the benefits under the Settlement Agreement), the named plaintiffs and Class will release Rapid and Cache Valley Bank from any and all claims that were brought, or could have been brought, against them by the Plaintiffs on

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 6
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

behalf of the Class Members.  *App. 1*, §§ 1.17, 1.18, 3.  Class Members that elect to opt-out, of course, are not subject to the release.  *App. 1*, §§ 3.1, 3.2.

**D.    Attorney Fees, Costs and Incentive Awards**

Actual out-of-pocket litigation costs will be paid from the Settlement Fund.  *App. 1*, § 12.2.  Case contribution awards may also be requested from the Court, which — if approved — would also be paid from the Settlement Fund.  *App. 1*, § 12.3.  Class counsel anticipates seeking two awards of $20,000 for the two class representatives.

The Agreement provides that class counsel will apply for attorney fees under the common fund/common benefit doctrine.  *App. 1*, § 12.1.  At present, Plaintiffs' counsel intends to seek approval of an award of 30% of the Settlement Amount.  However, if insufficient funds are available to pay Class Members at least 100% of the fees they incurred on the Release Cards, then Class Counsel will reduce its fee request in order to make more funds available for distribution to the Class Members.

All of these requests are subject to Court review and approval.  *App. 1*, §§ 12.1, 12.2, 12.3.

## VI.   LAW AND ARGUMENT

This motion requests four separate items: (1) that the Court preliminarily approve the Settlement Agreement; (2) that the Court approve the written notices; (3) that the Court establish a process to appoint a Notice and Claims Administrator and approve the published notice plan; and (4) that the Court set a schedule for distribution of notices, dates for opt-outs, comments and objections and a final approval hearing.

**A.    The Court Should Preliminarily Approve the Settlement Agreement.**

Compromise of complex litigation is encouraged and favored by public policy.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Federal Rule of Civil Procedure 23 governs the settlement of certified class actions and provides that "[t]he claims, issues, or defenses of a certified

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 7
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

class may be settled, voluntarily dismissed, or compromised only with the court's approval." FRCP 23(e). The Court must consider the settlement as a whole, "rather than the individual component parts," to determine whether it is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety").

FRCP 23(e) sets forth the following procedures:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

Judicial review of a proposed class settlement typically requires two steps: a preliminary approval review and a final fairness hearing. Preliminary approval is not a commitment to approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749, *1 (D. N.J. 2007) (citing *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D. N.Y. 1997)). *See also, Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004);

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 8
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Manual for Complex Litigation (4th), § 21.632 at 320 (2004). If the settlement is preliminarily approved by the Court, then notice of the proposed settlement and the fairness hearing is provided to class members. At the fairness hearing, class members may object to the proposed settlement, and the Court decides whether the settlement should be approved.

As part of the Court's consideration, it should consider factors including:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959. Some of these factors, such as the reaction of class members, can only be gauged after preliminary approval and notice is provided. Especially at this preliminary phase, the question is not "whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

In this case, the parties negotiated extensively at arm's length with the help of mediator Lou Peterson to arrive at a Settlement Agreement that provides substantial compensation to the Class Members. The settlement is fair and adequate and not the result of collusion between the parties.

### 1. Plaintiffs Believe Their Case Is Strong, But the Risk Litigation Could Go on for Years Is Also High.

Defendants contend they have complied, and continue to comply, with all applicable laws. Plaintiffs disagree and believe their case against Defendants is strong. Under the proposed settlement, Class Members who submit claims are eligible to receive all their fees back plus additional damages. Spoonemore Decl., ¶5. Not only does the proposed settlement provide compensation to these Class Members, but also payment

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 9
[Case No. 3:17-cv-05848-BHS]

of notice and administration expenses, attorney fees, litigation costs, and incentive awards.  The strength of the case is fully reflected in the proposed settlement.

### 2. The Amount Offered in Settlement Is Fair, Adequate and Reasonable

The Settlement Fund of up to $11,600,000 is fair, adequate, and reasonable. Data produced by the Defendants indicates that during the class period, 4,132,623 release cards were issued to approximately 2,877,860 unique individuals.  Spoonemore Decl., ¶4. It also shows that, in total, $29,390,142.40 in fees were paid to Defendants during the Class Period. Spoonemore Decl., ¶4. The average fees paid by each class member is $10.21

The normal class action response rate is somewhere between 5% and 8%. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2017) ("response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent"); *Keil v. Lopez*, 862 F.3d 685, 697 (8th 2017) ("we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence suggesting that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (7.7% rate "higher than average"). *See also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:24 (14th ed.) (participation rate as low as 3% not unusual in consumer class actions).

There are a number of factors that suggest that achieving a response rate between 5% and 8% in this case will be very challenging, even with a very aggressive (and expensive) notice process.  ***First***, the sociodemographic nature of the Class Members in this case is more transient than an average consumer.  *Brown v. Esmor Corr. Servs.*, 2005 U.S. Dist. LEXIS 17042, *14 (D. N.J. 2005) (former detainees "were a transient body of persons" that are difficult to reach); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1264-

1265 (S.D. Fla. 2016) (individuals who use storage units reflect a transient population). *Second*, individuals who interface with the criminal justice system tend to be far less responsive to claims processes in general. *Touhey v. United States*, 2011 U.S. Dist. LEXIS 81308, *21 (C.D. Ca. 2011) (2% response rate from individuals who had property seized by the government does not support rejection of the settlement given the lack of objections). *Third*, the class time period is long – over six years for the EFTA claims and over nine years for the State Subclass – making it harder to locate people affected during the early years of the class periods. *Fourth*, Defendants' records do not have addresses for the majority of class members. With the assistance of the initial notice administrator, Class Counsel was able to create a database of likely addresses for approximately a third of the total class. The response rate for Class Members whose address is unknown will undoubtedly – and unfortunately – be very low. *Indirect Purchaser v. Arctic Glacier, Inc.*, 2018 U.S. App. LEXIS 13882, *12 (6th Cir. 2018) ("response rate of less than 1%" is not necessarily an issue where "most class members could not be identified through reasonable effort" and publication notice was used instead).

Class counsel created a spreadsheet to estimate payouts. Spoonemore Decl., ¶6. Assuming (1) that the average amount of fees charged is $10.21 (a number derived from the total amount of fees divided by the total number of class members), (2) that 10% of class members who receive a notice by mail submit claims, and (3) that 3% of class members who did not receive written notice of the case but learned of the settlement through other means submit claims, all those claimants would each receive the minimum $15 payment plus three times the fees they paid even after payment of attorney fees at 30%, litigation costs, costs of the original notice, and costs of settlement notice and claims administration.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 11
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

### 3.     The Settlement Agreement Provisions Governing Attorney Fees and Costs Are Fair and Reasonable

The Settlement Agreement provides that class counsel shall apply for attorney fees under the common fund/common benefit doctrine. *App. 1*, § 12.1.  The Agreement does ***not*** contain a "clear sailing" provision – anyone, including the Defendants, can challenge any fee request. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050 (9th Cir. 2019) ("Although clear sailing provisions are not prohibited, they 'by [their] nature deprive[] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored.") (*quoting Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).

Class counsel intends to seek an award of 30%, subject to a downward revision if Class Members do not recover 100% of the fees Defendants charged to them. The court need not presently consider whether 30%, or any other level, is the appropriate fee award.  Rather, the issue is whether the Settlement Agreement as a whole, including its provision allowing Class Counsel to apply for an attorney's fee award is fair and reasonable. Preliminary approval of the Settlement Agreement does not bind the Court to any provision of attorney fees. *See, e.g., Jones v. GN Netcom, Inc.*, 654 F.3d 935, 945 (9th Cir. 2011) (the Ninth Circuit's rejection of a fee award does not necessitate invalidation of the trial court's approval of a settlement agreement).

The Settlement Agreement also provides for the payment of Class Counsel's out-of-pocket costs and expenses. *App. 1*, § 12.2. Like the request for fees, Class Counsel's reimbursement request must also be reviewed and approved by the Court. *Id.*

### 4.     The Settlement Agreement's Incentive Award Provision Is "Fair, Adequate and Reasonable"

The Settlement Agreement also permits Class Counsel to seek case contribution awards for the named class representatives.  *App. 1*, § 12.3. The Ninth Circuit has established the factors to consider when reviewing incentive awards for named

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

plaintiffs. The Court must consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation" when determining whether an incentive award is appropriate. *Staton,* 327 F.3d at 977, citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016; *see, e.g., Louie v. Kaiser Found. Health Plan, Inc.,* 2008 U.S. Dist. LEXIS 78314, 18 (S.D. Cal., Oct. 6, 2008).

Here, both class representatives have dedicated substantial time, effort, and risk to protect the interests of the class. They gathered and organized documents and they were subject to deposition by Defendants' counsel. Class Counsel will submit evidence from the class representatives detailing their specific efforts in the application for fees, costs and incentive awards, assuming the Settlement Agreement is preliminarily approved. Class Counsel contemplates seeking awards of $20,000 for each class representative. At this point the Court need not decide whether such an incentive award should be ordered. The Court should conclude that the provision in the Settlement Agreement permitting class counsel to seek an incentive award does not render the proposed Settlement Agreement unfair or a product of collusion.

### 5.   The *Cy Pres* Provision Is Reasonable

It is likely that some money will remain in the Qualified Settlement Trust Account after the payments directed by the Settlement Agreement. None of the initial $11,000,000 funds will revert to Defendants. *App. 1*, § 9.4. In the event of extra funds, the Parties will propose potential *cy pres* recipients to the Court, with notice posted on the notice webpage, as part of the final approval motion. *App. 1*, § 9.4. Class members will be informed of their right to comment and/or object to any potential *cy pres* recipient. This

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

is recognized as a proper procedure to award *cy pres* funds.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (Propriety of *cy pres* considered once it is clear that funds will be available); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Class members know there is a possibility of a *cy pres* award and that the Court will select among recipients proposed by the parties at a later date. This knowledge is adequate to allow any interested class member to keep apprised of the *cy pres* recipient selection process. We are confident the Court will ensure the parties make their proposals publicly available and will allow class members the opportunity to object before it makes a selection."); *In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, *5-6, 2013 WL 1120801 (N.D. Cal. 2013) ("A list of the twenty proposed *cy pres* recipients and explanation of how they intend to use the funds is provided in the Final Approval Motion as well as posted on the litigation website.").

### 6.    The Settlement Was the Result of Arm's-Length Negotiations

This case was extensively negotiated at arm's-length with the assistance of mediator Lou Peterson of Hillis Clark Martin & Peterson, P.S. The initial process, which stretched out over a month and a half, involved numerous offers and counter-offers. Spoonemore Decl., ¶2.  A second round of negotiations over the additional fund took another month of negotiations, with multiple offers exchanged.  *Id.*, ¶4. The settlement was the result of a fair, arms-length process.

### 7.    There Was Sufficient Discovery

Even a casual look at the docket shows this action's long history -- this was not an early settlement.  Filed in 2017, the Parties have been battling for years, and significant discovery has occurred throughout that period. Spoonemore Decl., ¶5. Specifically, sufficient data has been received in discovery to make accurate estimates of the total amounts of fees deducted from release cards received by Class Members.  *Id.*  Discovery was more than sufficient to reach a settlement of this matter.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 14
[Case No. 3:17-cv-05848-BHS]

8.    **Class Counsel Is Experienced in Similar Litigation and Recommend Settlement**

Class counsel is very experienced in similar class action litigation and strongly recommends that the Agreement be approved.  Spoonemore Decl., ¶7.

**B.    The Court Should Establish a Process Under Which Class Counsel Can Seek Approval for a Notice and Claims Administrator After Soliciting Bids and Estimates**

The cost of providing notice of the settlement and running the claims process for over two million class members is incredibly expensive.  Two preliminary inquiries to professional notice and claims processors elicited estimates well in excess of one million dollars.  Spoonemore Decl., ¶9.  Class Counsel therefore asks this Court to preliminarily approve the Settlement Agreement and written notices, but defer naming a Notice and Claims Administrator and publication plan to give Class Counsel an opportunity to refine the scope of work, solicit additional estimates from competing firms, and negotiate over the price of those services.  Once Class Counsel has finished this process, then they will file a proposal to the Court with Class Counsel's recommendations for the appointment of the Notice and Claims Administrator and publication plan. This process is reflected in the proposed Order submitted with this motion.

**C.    A Final Approval Hearing Should Be Set**

Finally, Class Members with comments, concerns or objections to any aspect of the Settlement Agreement should be provided with an opportunity to submit written material for the Court's consideration.  Class Members who wish to appear in person to address the Court with any comments, concerns or objections should also be provided with an opportunity to appear at a hearing before the Court decides whether to finally approve the Settlement Agreement.

Class Members who wish to appear in person should notify the Court and the parties of their desire to be heard, along with a statement of the issue or issues that they would like to address.  The proposed order submitted with this motion requires that

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT ETC. – 15
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

such notice be given so that the Court and the parties can consider and address the specific issues that class members wish to raise at the hearing. Finally, the Class requests that the Court set a hearing date to consider comments and/or objections and to decide whether the Settlement Agreement should be finally approved and implemented.

The Class proposes that the Court issue a scheduling order along with preliminary approval of the Settlement Agreement. The proposed Order includes a proposed schedule that includes deadlines for: (1) seeking the appointment of a Notice and Claims Administrator; (2) seeking approval of the published notice plan; (3) sending notices; (4) Class Counsel to file a motion for attorney fees, costs and incentive awards; (5) Class Members to opt-out and/or file comments and objections with the Court; and (6) the filing of a motion for final approval of the Settlement Agreement.

## VII.  CONCLUSION

The Class respectfully requests that the Court:

(a)    preliminarily approve the Settlement Agreement;

(b)    approved the proposed written short-form and long-form notices;

(c)    establish a process for the appointment of a claims administrator and approval of a published notice plan; and

(d)    establish a final settlement approval hearing and process.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Respectfully submitted:  August 22, 2023.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

   /s/ Richard E. Spoonemore
Chris R. Youtz, WSBA #7786
Richard E. Spoonemore, WSBA #21833
Eleanor Hamburger, WSBA #26478
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: chris@sylaw.com
        rick@sylaw.com
        ele@sylaw.com
Attorneys for Plaintiffs/Class/Subclass

*I certify that the foregoing contains 5,079 words, in compliance with the Local Civil Rules.*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT ETC. – 17
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246