The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY REICHERT and GARY MOYER, both individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KEEFE COMMISSARY NETWORK, L.L.C. d/b/a ACCESS CORRECTIONS; RAPID INVESTMENTS, INC., d/b/a RAPID FINANCIAL SOLUTIONS, d/b/a ACCESS FREEDOM; and CACHE VALLEY BANK,

Defendants.

NO. 3:17-cv-05848-BHS

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH RAPID FINANCIAL AND CACHE VALLEY BANK AND ALLOCATION OF SETTLEMENT FUNDS

**Note on Motion Calendar:**
  **Fairness Hearing set on**
  **December 18, 2023, at 2:30 p.m.**

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT
[Case No. 3:17-cv-05848-BHS]

**TABLE OF CONTENTS**

I.   BACKGROUND ........................................................................................1

   A.   Release cards ...............................................................................1

   B.   The mediation and resulting settlement ...................................3

   C.   Preliminary approval ..................................................................4

   D.   Notice and claims .......................................................................5

   E.   Responses and objections from class members ........................5

II.  OVERVIEW OF SETTLEMENT AGREEMENT ................................6

III. THE COURT SHOULD APPROVE THE SETTLEMENT
     AGREEMENT .........................................................................................7

   A.   Introduction .................................................................................7

   B.   The Settlement Agreement Meets the Standards for Final
        Approval Under Rule 23(e) ........................................................7

        1.   Adequacy of representation.............................................8

        2.   The proposal was negotiated at arm's length ...........10

        3.   The relief provided for the class is more than
             adequate.........................................................................11

             a.   The amount of the settlement...........................11

             b.   Costs, risks, and delay of trial and appeal......15

             c.   The effectiveness of any proposed method of
                  distributing relief to the class, including the
                  method of processing class-member claims.....16

             d.   The terms of any proposed award of attorney's
                  fees, including timing of payment.....................17

             e.   Any agreement required to be identified under
                  Rule 23(e)(3). ....................................................20

        4.   The proposal treats class members equitably relative
             to each other. ................................................................20

   C.   Settlement Is Fair under the Additional Criteria Used by
        the Ninth Circuit .......................................................................21

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – i
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

1.  Strength of Plaintiffs' case .................................................. 22

2.  Risk, expense, and duration of further litigation ..................... 22

3.  Risk of maintaining class action status ................................. 22

4.  The amount offered in settlement. ....................................... 22

5.  The extent of discovery completed and the stage of
    the proceedings ............................................................... 23

6.  The experience and views of counsel ................................... 23

7.  The presence of a governmental participant ......................... 24

8.  The reaction of the Class members to the proposed
    settlement ....................................................................... 24

    a.  Objections to the settlement. ...................................... 24

    b.  Opt-out requests ..................................................... 26

IV.  THE ATTORNEY FEES REQUESTED BY CLASS COUNSEL
     SHOULD BE GRANTED ................................................... 26

V.  THE COSTS AND EXPENSES INCURRED SHOULD BE
    REIMBURSED .................................................................... 27

VI.  THE CLASS CONTRIBUTION AWARDS SHOULD BE AWARDED ......... 27

VII.  THE COURT SHOULD EXTEND THE DATE BY WHICH CLAIMS
      CAN BE FILED ................................................................ 28

VIII. CONCLUSION ..................................................................... 28

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## I.  BACKGROUND

**A.     Release cards**

When persons are arrested and detained, detention facilities confiscate their personal property, including cash. That money is held in trust until they are released from custody. Historically, facilities returned that money in cash or with a check. Some facilities, however, require persons being released to receive the money through unrequested prepaid debit cards ("release cards"). As this Court put it: "Moyer, as far as he knew, was simply getting his money back when he left jail. A reasonable person in Moyer's position could not be expected to understand that he could not leave jail with his own money, a right protected by Washington law, without being bound to a contract with an unknown bank (subject to potentially illegal fees) …" *Reichert v. Keefe Commissary Network LLC*, 542 F. Supp. 3d 1133, 1144 (W.D. Wash. 2021).

Accepting one's own money, in the only form available, cannot be construed as assent to a contract that charges fees for simply possessing the card and imposes other burdens and conditions. *Id*. Protection against overreaching practices for debit cards like the release cards involved in this litigation are provided by the Electronic Fund Transfer Act, which imposes regulations on issuers of these cards and provides remedies when its requirements are ignored.

This case was initiated as a class action by Jeffrey Reichert, who received a release card from the Kitsap County jail. Plaintiff Gary Moyer later joined as a class representative. Three motions were brought to compel them to arbitrate their claims to prevent them from representing thousands of persons who were issued these cards to obtain their own funds. Those motions were denied, resulting in two appeals by defendants. The final appeal resulted in a published opinion from the Ninth Circuit establishing that Reichert and Moyer and the other class members could not be bound

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 1
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

by the terms of the contract that accompanied the release card they were forced to accept for the return of their money.

A national class was certified to pursue claims under the EFTA because plaintiffs and the class members (1) should not have been required to receive their money on a release card that they did not request and (2) the fees charged on those cards were prohibited under the EFTA. Defendants sought review by the Ninth Circuit of the class certification order, which was denied. Dkt. 109.

Discovery did not come easy. Plaintiffs had to make a major motion to compel production of documents and answers to interrogatories to obtain information for all of the agreements and facilities involved in the case. An order was obtained that required the defendants to make a full and complete production of all documents and information requested. Dkt. 117.  And plaintiffs went further; they sent public record requests to more than 900 of the facilities involved in this case to obtain information regarding the release card program at their facilities to demonstrate that class members uniformly had no choice to receive back their money other than through Defendants' release cards.

Data was also received from defendants for more than 4 million release cards that had to be reviewed and evaluated for damages and for information regarding the class members. This data, which is primarily entered by the facilities, was inconsistent and needed substantial work to evaluate. Armed with this information, the documents received through discovery, and the thousands of documents obtained from public record disclosure requests, the class was ready for trial.

After the final opinion was received from the Ninth Circuit in December 2022, a schedule was set for cross-motions on summary judgment that would test the parameters of how the EFTA applied to the unique situation of release cards. The parties

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 2
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

also agreed to mediate this dispute through Lou Peterson, an experienced trial lawyer/mediator.

**B.    The mediation and resulting settlement**

Class counsel made it clear from the beginning of the mediation, as it did in the settlement discussions that resolved the claims against defendant Keefe, that it would not agree to a "claims-made" settlement. In a claims-made settlement, a defendant is liable only for the amount of money needed to pay submitted claims. A cap is usually established to limit the total amount paid. It is generally acknowledged that in class actions involving hundreds of thousands or millions of class members with small claims, the response rate will be low even with extensive notice of the settlement to class members. It was important to us, however, to obtain a fund not only sufficient to pay claimants in full, but also to require defendants to pay more money as a deterrent for its improper activity and also as a benefit to a *cy pres* fund that would be used to benefit the class and serve the purposes of the litigation.

The initial mediation session on January 11, 2023, failed to produce an agreement.

Mediator Peterson continued to doggedly follow up over the next six weeks until an agreement was reached in principle on February 23, 2023. These negotiations concluded just as both sides were about to file cross-motions for summary judgment. Negotiations continued over an additional two weeks to produce a written agreement. Under the terms of that Settlement Agreement, Defendants Rapid and Cache Valley Bank agreed to pay $11,000,000 to resolve the claims against them. Based on their experience in similar class actions, class counsel believed this amount would be sufficient to pay $15 plus three times the amount of fees incurred to each class member submitting a claim <u>after</u> attorney's fees, expenses, and payments to class representatives were paid from the settlement fund – an amount greater than they would receive with a total

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 3
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

victory at trial – and that there would likely be a substantial amount remaining for a *cy pres* distribution. The Settlement Agreement reflects that goal, with the hope that the increased amount would attract more class members to submit claims.

After that agreement was reached, Defendants discovered that the fee data produced during discovery omitted some individuals who fell within the class definition. The updated data was provided to and analyzed by class counsel and a new round of negotiations commenced over an additional payment by Defendants to account for previously unknown class members. The parties eventually arrived at an addendum to the original agreement where Defendants agreed to make up to an additional $600,000 available for payment of claims if the original $11,000,000 is insufficient to pay all class claims at 100% after payment of fees, costs, notice costs, incentive awards, and administration costs.

**C.    Preliminary approval**

Plaintiffs submitted the Settlement Agreement for preliminary approval by the Court so that notice could be provided to class members to advise them of their rights to object, opt out of the case to pursue their own claims, or file a claim.

The plaintiff/class representative from the *Watkins v. Rapid Financial* class action pending in the district of Nevada sought to intervene to oppose the motion, claiming that settlement would adversely affect class members in that action. (The *Watkins* case, which was filed three years after Reichert filed this action, raises claims against defendants Rapid and Keefe Commissary based on release cards issued from facilities in Nevada that are part of the Reichert case.) Watkins opted out of the *Reichert* class after it was certified, however, and this Court found that he lacked standing to object to an agreement that he had already decided not to participate in.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 4
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

On September 8, 2023, the Court gave preliminary approval to the settlement. Dkt. 213. The Court later approved the appointment of Kroll as a settlement administrator and the proposed plan for providing notice to class members. Dkt. 220. Counsel for the class also submitted a request for attorney's fees, reimbursement of costs and expenses, and payment of case contribution awards to the two class representatives, which will be considered at the hearing for final approval. Dkt. 221.

**D.    Notice and claims**

Court-approved notices were initially mailed to 782,854 class members. Declaration of Jeanne C. Finegan (Finegan Decl.), ¶8. Kroll, a professional claims administrator, developed a plan to reach class members through social media and other sources. That included sending notices and information packets to 25,000 groups that work with individuals released from prison. A case website was established (www.releasecardsettlement.com) that provides information and the ability to file a claim. Claims could also be filed by email or through the case website on a mobile phone, tablet, or computer. Kroll believes that at least 85% of the class members were provided notice through either direct mailings or other sources of information regarding the case and the right to file a claim. Finegan Decl., ¶4. Kroll's Media Notice Plan served over 59 million online display and social media impressions. *Id*.

More than 15,000 claims have been received, most of them through mobile phones. The deadline for filing claims ended on December 4, but we are still receiving claims and still discovering additional addresses of potential class members. As part of this motion, we are requesting permission to accept and process late claims.

**E.    Responses and objections from class members**

Class counsel communicated personally with more than 400 class members to assist them in filing claims, answer questions, and receive feedback. Most have been

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 5
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

grateful for the opportunity to redress the issues they had with their unrequested release cards.

Two objections were filed. One is from class member Kevin Lawrence that was submitted on November 15, 2023. Dkt. 223. His concerns are addressed on page 26 of this motion. The other objection is a 28-page submission from the law firm that previously brought a motion to intervene to object to Plaintiffs' motion for preliminary approval of the settlement on behalf of Osvaldo Torres ("Objector Torres") that was filed on December 4, 2023. Dkt. 226. Those objections are extensive and addressed throughout this motion, particularly in the sections that address the standards for approval of a class action settlement.

This motion seeks approval of the Settlement Agreement. The declarations of Chris R Youtz, counsel for the class, and Jeanne C. Finegan, the Managing Director and Head of Kroll Notice Media Solutions are also being submitted in support of this motion.

## II.  OVERVIEW OF SETTLEMENT AGREEMENT

This is a straightforward agreement. Defendants agree to pay $11 million in cash to a settlement fund. They have also agreed to pay up to an additional $600,000 if there is insufficient money after deduction of fees and costs from the settlement fund to pay all claimants in full. In return, they obtain a release of all claims that were brought, or could have been brought, against them in this action. The amount of attorney's fees, reimbursement of costs and expenses, and case contribution awards will be determined by the Court. The stated goal in the Settlement Agreement is to pay claimants three times the fees they incurred from their release cards plus $15. Any money remaining after claimants have been paid will be distributed to a *cy pres* fund for the benefit of the class.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 6
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

### III.  THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT

**A.    Introduction**

Compromise of complex litigation is encouraged and favored by public policy. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Rule 23 governs the settlement of certified class actions and provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Court must consider the settlement as a whole, "rather than the individual component parts," to determine whether it is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety").

Rule 23(e) was amended in 2018 to specifically provide standards that should be used by the Court to determine whether a settlement of a class action should be approved. In the Ninth Circuit, guidelines for determining whether approval should be granted were identified in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) and similar cases. Those standards should still be examined in addition to the standards of Rule 23(e). *See Trampe v. CD Projekt S.A.*, 2023 U.S. Dist. LEXIS 211662, at *10 n.9 (C.D. Cal. Nov. 22, 2023). Under both set of standards, the Settlement Agreement here should be approved.

**B.    The Settlement Agreement Meets the Standards for Final Approval Under Rule 23(e)**

In determining whether the settlement is fair and reasonable, the Court should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e). These standards have been met:

### 1.    Adequacy of representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."

As described above and in the time records submitted by counsel in support of their fee application, class counsel and class representatives Reichert and Moyer have diligently and thoroughly litigated this case. The class representatives participated in searching for discovery responsive to discovery request to them as well as preparing for and attending their depositions. They have worked with counsel regarding the case throughout years of litigation. Plaintiffs had to resist three motions to compel them to arbitrate these claims, appeals of those motions, and extensive battles over class certification. Plaintiffs also obtained extensive public record discovery from hundreds of facilities to prepare this case for trial. Settlement was reached as cross-motions for summary judgment were about to be filed, but only after extensive negotiations as detailed above. Both class representatives were found to be adequate when the class was certified, and nothing has changed to alter that conclusion.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ALLOCATION OF SETTLEMENT – 8
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Objector Torres contends that Reichart and Moyer are inadequate class representatives because they did not file claims on his behalf under the Nevada consumer protection act or consumer protection act claims for class members living in the other 44 states. Not surprisingly, Objector Torres does not cite any authority requiring a class representative for a national class to raise additional state law claims that each of the members of the class might have in their respective states. Nonetheless, he claims there is a conflict because of the possibility that a claim under state law might provide injunctive or other relief not offered by the EFTA. The objector cites two cases to support that contention: *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 464 (10th Cir. 1974) and *Hill v. Genuine Parts Co.*, 2019 U.S. Dist. LEXIS 131835 (E.D. Cal. Aug. 5, 2019); the first reveals what a true conflict is, the second has no relevance to anything.

In *Albertson's*, the named plaintiffs and other potential class members were competitors, whose competitive positions would be affected by changes being sought in the lawsuit regarding a pricing structure that they all participated in. What was good for one class member might be bad for another because of their competitive position. Here, however, there is no conflict between Reichert and Moyer and the class members because they are all entitled to the same relief and incur the same obligations under the settlement agreement.

In *Hill*, no class was certified and the case was dismissed as moot because the plaintiff had already personally settled his claims with the defendant. That case is not relevant.

Further, the fact that Reichert and Moyer brought a Washington Consumer Protection Act claim on behalf of the Washington subclass does not give them or the Washington subclass members any advantage over the other members of the national

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 9
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

class. The settlement agreement provides that the Washington subclass members who participated in the Keefe settlement, who already received treble damages for the fees they paid, will receive an additional amount from this settlement only to the extent that it provides them with a $15 payment as well as treble damages. In other words, the Washington subclass participation will not result in more money for that group than individuals in the national class. Everyone receives the same recovery.

2.    **The proposal was negotiated at arm's length**

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." There is no doubt the agreement was negotiated at arm's length. The parties used a mediator to facilitate the settlement, which is an indication of an arm's-length transaction. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 U.S. Dist. LEXIS 124202 at *6 (E.D. Pa. Sept. 13, 2016).

The initial mediation session was unsuccessful, and the mediator and the parties continued negotiating and exchanging offers for more than five weeks. As the detailed written terms of the settlement agreement were being negotiated, it was discovered that fee data received in discovery by plaintiffs was incomplete, and the additional data was produced. This resulted in further negotiations regarding how the settlement should be modified to account for the additional data. Eventually, a resolution was reached that an additional $600,000 would be made available if necessary to reach the goal of providing claimants with an award of $15 plus three times their fees. These facts show that there certainly was no collusion between the parties and that the agreement resulted from arm's-length negotiations.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 10
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**3.     The relief provided for the class is more than adequate.**

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

####     a.     The amount of the settlement.

Not surprisingly, "[t]he amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *In re BofI Holding, Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 188621, at *17 (S.D. Cal. Oct. 13, 2022). When the settlement provides cash, and not injunctive or other non-cash relief that has to be valued, the comparison is simple: compare the amount of the settlement to the estimated damages. In *BofI Holding*, for example, experts concluded that the estimated damages were between $135.3 to $158.5 million. The court concluded that the settlement amount of $14,100,000 – a range of between 8.9% and 10.4% of damages, which is above the median for settlements in class-action securities cases – was substantial and should be approved. *Id* at *17.

Here, the actual damages for the class is approximately $29.4 million, which represents the gross revenues received by Defendants from the release cards. The

Sirianni Youtz
Spoonemore Hamburger PLLC
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

settlement amount of $11.6 million is 39.5% of that amount. That is significantly higher than most class-action settlements.[1]

Objector Torres, however, argues that the settlement should be rejected, claiming it is actually only a paltry 5% of the class's damages claim. How does he (or, more correctly, his lawyers) arrive at that number?

First, instead of using the total settlement amount of $11.6 million for his comparison, he says that the benefit received by the class is approximately $6.6 million. He arrives at that figure by subtracting the amounts requested for attorney's fees, costs, and incentive payments from the amount of the total settlement, apparently claiming that those amounts should not be treated as a "benefit to the class." He is incorrect. The class, like any litigant, is obligated to pay attorney's fees and expenses needed to obtain the recovery on their behalf and the settlement benefits the class by providing money for those payments. *See Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

Second, he increases the damages claim from approximately $29.4 million to approximately $117.6 million. The $6.6 million amount derived as the settlement value is 5.6% of his estimated $117.6 million damages claim, which he rounds down to 5%. This transformation occurs based on his assertion that the comparison should be based on a maximum possible recovery, which he contends should include treble damages even though the EFTA does not authorize treble damages in class actions.

The difficulties with this argument begin with his miscalculation of treble damages, assuming they are even applicable. His counsel – who should know better –

---

[1] We have found only one similar EFTA case involving release cards that settled. That settlement was on behalf of a national class against release card vendor Numi that settled for $550,000. 36% of that went for attorney fees. *Humphrey v. Stored Value Cards*, 2021 U.S. Dist. LEXIS 5539 (N.D. Ohio Jan. 12, 2021). The order does not indicate what the estimated damages were for the class.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 12
[Case No. 3:17-cv-05848-BHS]

calculates treble damages by multiplying the actual damages ($29.4 million) by three ($88.2 million) then **adds** those two figures together to arrive at $117.6 million. That amount is four times the actual damages or, in other words, quadruple damages. *See, e.g.*, *Perez v. Root Ins. Co.*, 2023 U.S. Dist. LEXIS 59884, at *6 n.3 (W.D. Tex. Mar. 17, 2023) ("Root seems to reach $60,000 by adding the actual damages under the breach of contract claim to the treble damages under the DTPA claim. It appears to this Court that under Texas law, the maximum award under the DTPA is up to treble damages, not treble damages plus actual damages (which effectively results in quadruple damages)"). Similarly, the Washington Consumer Protection Act provides "the court may, in its discretion, increase the award of damages **up to an amount not to exceed three times** the actual damages sustained…" RCW §19.86.090 (emphasis added).

Indeed, the court in *Watkins*, where objector's counsel represents the plaintiff, the court granted a stay of the action because of the pendency of this settlement noting its class members would fare better under this settlement than if they had total success at trial in Nevada:

> But Plaintiffs have not shown how joining the *Reichert* settlement would harm Nevada Class Members. The proposed settlement would pay class members three times the fees incurred on their release card plus 15 dollars. (ECF No. 83-1 at 11.) **In contrast, the maximum recovery Plaintiffs may obtain at trial under Nevada law is treble damages, or three times the fees they incurred**. (ECF No. 85 at 11.) It is unclear how paying each class member an additional 15 dollars constitutes a "reverse auction settlement" or would harm Nevada Class members. (*Id.* at 2.)

*Watkins v. Rapid Fin. Sols., Inc.*, No. 3:20-cv-00509-MMD-CSD, 2023 U.S. Dist. LEXIS 198984, at *5 (D. Nev. Nov. 3, 2023) (emphasis added).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Thus, the objector's damages calculations are off by $23.4 million from the get-go. But his mistakes go further. His damage claim assumes for some reason that the treble damages provisions of the consumer protection acts for all 46 states with facilities that issued release cards are somehow applicable. But not all states permit class actions under their consumer protection statutes:

> Under the laws of Alabama, Alaska, Georgia, Kentucky, Louisiana, Mississippi, and Montana, there is no right to bring a class action to enforce the consumer protection statutes. *See* Ala. Code §8-19-10(f); Alaska Stat. §45.50.531 (b) (repealed provision that had allowed class actions); Ga. Code Ann. §10-1-399 (a); *Arnold v. Microsoft Corp.,* No. 00-CI-00123, 2001 WL 193765, at * 6 (Ky. Cir. Ct. July 21, 2000); La. Rev. Stat. Ann. §51:1409(A); Miss. Code Ann. §75-24-15(4); Mont. Code Ann. §30-14-133(1)."

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005).

And even if a state allows a class action to be brought under its consumer statute, treble damages may not be available if the claim is brought in a class action. For example, Colorado, selected by the objector as one of the five examples of state consumer protection acts to support its objection, limits recoveries in class actions to actual damages: "In a case certified as a class action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs." Colo. Rev. Stat. §6-1-113(2.9). Prior to the addition of subsection 2.9 in 2022, no remedy – including actual damages – was available in a class action. *Martinez v. Nash Finch Co,* 886 F. Supp. 2d 1212, 1218 (D. Colo. 2012) ("The plain and unambiguous language of the statute compels the conclusion that all of the remedies in subparts (a)(I)-(III) and (b), including actual damages, are not available to classes.").

Also, most consumer protection statutes require some form of scienter and are discretionary, not mandatory, awards. The level of scienter required can vary from state

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 14
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

to state. The claims under the EFTA, however, do not require fraud, bad faith, or any other form of scienter to obtain relief.

And, as noted in *Rodriguez*, a case the objector cites, even if treble damages flow automatically from a successful judgment on a claim, that possibility is usually not a factor in examining whether a settlement is adequate:

> *Amount offered in settlement.* Objectors claim it was legal error for the court to consider only estimates of *single* damages without considering the *treble* damages that are an automatic component of the recovery of antitrust damages. 15 U.S.C. §15(a)..… [T]he court declined to accept Objectors' argument that the monetary portion of the settlement was inadequate because the section 7 claim was worth treble the class expert's single damages estimate – or $ 360 million. It reasoned that doing so would presuppose that plaintiffs prevail at the end of trial (thus undercutting the point of a negotiated resolution where defendants do not admit liability); it would be speculative; and, as the Second Circuit indicated courts do not traditionally factor treble damages into the calculus for determining a reasonable settlement value.

*Rodriguez*, 563 F.3d at 964.[2] *See also*, *Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*, 622 F.3d 275, 312 (3d Cir. 2010) ("Contrary to the Objectors' contentions, we know of no authority that *requires* a district court to assess the fairness of a settlement in light of the potential for trebled damages.").

### b. Costs, risks, and delay of trial and appeal.

Release card litigation has a rocky history. A plaintiff in Oregon District Court brought claims under EFTA regarding release cards issued by a different vendor. Before

---

[2] *Rodriquez* noted that even if treble damages were considered in evaluating the settlement, the settlement amount represented approximately 10% the treble damages and "the negotiated amount is fair and reasonable no matter how you slice it." 563 F.2d at 965. Here, the settlement amount is more than 13% of the objector's hypothesized treble damages of $88 million.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 15
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the case could be certified as a class action, it was dismissed on summary judgment and appealed. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567 (9th Cir. 2020). While the Ninth Circuit reversed that decision, there are still many legal issues pending because of the number of regulations involved in the case and the scope of liability for the different defendants. This case has spent substantial time in the Ninth Circuit, and whatever the result was at trial, it would have likely been appealed. Also, the Ninth Circuit declined to consider this Court's class certification decision, but that issue was hotly contested and could likely be raised on appeal. This case has also been extraordinarily expensive in terms of providing notice and processing claims. If the settlement is not approved, and the plaintiffs prevail at trial, additional noticing and claims administration will have to be performed at substantial additional cost. All in all, the uncertainty, time, and expense for a case that was filed more than six years ago strongly supports approving the settlement.

> c.    **The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.**

As detailed above and in the declarations of Chris R. Youtz and Kroll Managing Director Jeanne C. Finegan, extensive efforts have been made to provide notice through the mail, through a website established for the case, and through social media platforms under the direction of Kroll. A substantial effort has been made to make submission of claims as painless as possible. The postcards mailed to class members from the addresses Kroll and class counsel were able to obtain include a return postcard that can be completed and mailed to submit a claim. Class members can send photographs of the completed claim form by email to a dedicated email address: releasecard@syalaw.com. Several hundred claims were submitted by that method. However, the website has

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 16
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

provided the most direct and easiest way to submit a claim with drop-down menus and other aids. To date, more than 8,000 claims have been filed through the website. Approximately 80% of the claims filed electronically have been submitted through mobile phones.

The only information that a claimant needs to add to the pre-populated claim form is their birthdate, the name of at least one facility where they received a release card, and the name they received the release card under if it is different than their current name. With that information, the fees they incurred for the cards can be calculated. Class counsel also responds to emails received directly at the dedicated email address and through the website with questions, including whether the release card they obtained is eligible for participation in the case.

> ### d. The terms of any proposed award of attorney's fees, including timing of payment.

Following the revision of Rule 23(e), "district courts must now consider the terms of any proposed award of attorney's fees when determining whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii)." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (cleaned up).

In *Briseño,* the defendant agreed to pay an estimated $67.5 million on a claims-made basis to resolve claims for mislabeling a vegetable oil as "natural." Because the claims were being paid on a claims-made basis, the total amount paid would depend solely on the number of claims submitted. The agreement also provided the defendant would not object to plaintiff's request for $6.85 million in attorney's fees and expenses. That amount would be paid directly from the defendant and be separate from the class settlement fund. If the court reduced the agreed-upon attorney's fees, that reduction would go to defendant rather than the class. *Briseño* at 1020. Because of the defendant's

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 17
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

willingness to pay possible substantial amounts on the claims and agree to an injunction that was valued at $27 million, the District Court approved the settlement.

The Ninth Circuit reversed, holding that under the revisions to Rule 23(e), the District Court should have examined the attorney's fee agreement for possible collusion under the criteria established in *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. 2011).[3] Applying those factors, the court found that (1) plaintiff's counsel received a disproportionate distribution of the settlement funds – approximately $7 million – while the class received less than $1 million through the claims-made process; (2) the parties agreed to a "clear sailing arrangement" where the defendant agreed not to challenge the agreed-upon fees for class counsel; and (3) the agreement contained a "kicker" clause where the defendant, rather than the plaintiff receives the funds remaining if the court reduces the agreed-upon attorney's fees. *Briseño* at 1026-27. Thus, the court vacated the order awarding attorney's fees and remanded to the District Court to "give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense." *Briseño* at 1028.

Objector Torres cites these cases in claiming that class counsel's fee request provides a "disproportionate distribution" and "raises major red flags with respect to the Settlement." To make that argument, he again ignores the total amount of the settlement, stating that the class will receive approximately $6 million rather than the $11.6 million defendants agreed to pay. He then says the $3.87 million fee request is 64% of the $6 million class members will receive, suggesting counsel is receiving 65% of the $6 million, leaving class members with only $2.13 million. He then mistakenly compares

---

[3] In *Bluetooth*, a products liability case, the approved settlement agreement provided the class $100,000 in *cy pres* awards and zero dollars for economic injury, while setting aside up to $800,000 for class counsel.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 18
[Case No. 3:17-cv-05848-BHS]

the 65% value to the Ninth Circuit benchmark of 25%, failing to note that the benchmark used by the Ninth Circuit and other courts is based on "the entire common fund." *Hessefort v. Super Micro Comput., Inc.,* 2023 U.S. Dist. LEXIS 198353, at *21 (N.D. Cal. May 5, 2023).[4]

Thus, the fee award requested by class counsel is not a "disproportionate distribution." In addition, the other two *Bluetooth* factors are not present: there is no "clear sailing arrangement" in the settlement agreement and any money not awarded on class counsel's fee request reverts to the class, not the defendants. Further, class counsel has made no agreement with Defendants regarding the amount of attorney's fees to be paid to class counsel.

Class counsel's request for attorney's fees and reimbursement of costs will be considered at the fairness hearing. A copy of that motion and supporting declaration was posted to the case website and is accessible through the "Dates and Updates" page on the website: https://www.releasecardsettlement.com/dates-and-updates.

Objector Lawrence objected that "the proposed fees far exceed what is reasonable and justifiable in this case. The attorney's fees should be commensurate with the benefits obtained for the class and should not unduly burden the class members who are already seeking fair resolution through this lawsuit." Dkt. 223 at 2. For the reasons explained in our motion for attorney's fees, class counsel believes that the fee request is fair and reasonable. No other objections to the attorney's fees have been made.

---

[4] *See also, Williams v. MGM-Pathe Communs. Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) ("The class' attorneys contend that the district court should have calculated their fee as one-third of the entire $4.5 million settlement fund, for a fee of about $1.5 million, rather than calculating it as one-third of the class members' claims against that fund, for a fee of only $3,300. We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar. We thus reverse and remand.")

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 19
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

    *e.*       *Any agreement required to be identified under Rule 23(e)(3).*

There are no agreements that need to be identified.

**4.**      **The proposal treats class members equitably relative to each other.**

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment).

No class member receives preferential treatment or rights over another class member. The settlement agreement treats all class members the same. The settlement agreement provides that the Washington subclass members who participated in the Keefe settlement, who already received treble damages for the fees they paid, will receive an additional amount from this settlement only to the extent that it provides them with a $15 payment as well as treble damages. In other words, the Washington subclass participation will not result in more money for that group than individuals in the national class.

Objector Torres contends that the national class members are not being treated fairly because they will have to release their state-related claims to participate in the settlement for the national class. However, "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 20
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

liability from related lawsuits in jurisdictions throughout the country. Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).

> The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*. Even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of an action before it.

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) (cleaned up, emphasis in original). Thus, the court has the authority to approve a settlement agreement that releases claims that are related to the facts in this case although not raised in this case. In addition, that is typical for settlement agreements, where defendants seek full resolution of the claims.

## C.    Settlement Is Fair under the Additional Criteria Used by the Ninth Circuit

Prior to the amendments to Rule 23(e), the Ninth Circuit had established criteria for determining whether a class-action settlement should be approved:

> We are required to determine whether the district court abused its discretion in balancing the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 21
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The courts continue to examine these standards as well as the standards contained in Rule 23(e). *See*, *Hessefort v. Super Micro Comput., Inc,* 2023 U.S. Dist. LEXIS 198353, at *8-*10 (N.D. Cal. May 5, 2023). An examination of these criteria confirms that the settlement should be approved.

### 1.      Strength of Plaintiffs' case

We believe strongly in the merits of our case. But we recognize, as discussed above, that cases brought under EFTA are not clear-cut, particularly when they involve the unusual situation of prepaid debit cards issued to persons released from jail. We have also been embroiled in repeated, time-consuming appeals to the Ninth Circuit on ancillary issues. This settlement will give finality and provide a substantial payment to claimants and a significant sum to *cy pres* to help address the unfair use of these cards to return money to persons being released from custody.

### 2.      Risk, expense, and duration of further litigation

As discussed above in responding to the Rule 23(e)(2)(C) criteria, the uncertainty, time, and expense for a case that was been filed more than six years ago strongly supports approving the settlement.

### 3.      Risk of maintaining class action status

Defendants sought permission for review by the Ninth Circuit of this Court's decision to certify a class. That court declined to consider the class certification decision, but the arbitration issue was hotly contested and could be raised on appeal. That uncertainty supports approval of this settlement.

### 4.      The amount offered in settlement.

The amount of the settlement is $11 million with an additional $600,000 available if needed to make payments to claimants which, after payment of fees, costs, and notice

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 22
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

and settlement administration expenses, will pay claimants three times their actual damages plus an additional $15. Any money remaining after all claims have been paid will be used to benefit the class through *cy pres* awards approved by the court to address the unfair use of these cards to return money to persons being released from custody or that otherwise benefit absent class members. The value of the settlement is nearly 40% of the actual damages that could be obtained through a trial, a result substantially higher than similar size class actions.

### 5. The extent of discovery completed and the stage of the proceedings

Settlement was not reached until after many years of litigation—including multiple trips to the Ninth Circuit—and extensive discovery. The settlement was reached as the parties were about to file cross-motions for summary judgment just prior to an upcoming trial date set by the Court. Class counsel obtained substantial discovery from defendants and from hundreds of facilities obtained through public record requests that helped counsel make a thorough, informed decision regarding an appropriate settlement amount.

### 6. The experience and views of counsel

Class counsel's experience in class actions, including class prison-related class actions such as contesting extraordinarily high telephone charges to families of inmates, is described in counsel's motion for attorney's fees. Class counsel strongly supports final approval of the Settlement Agreement. Counsel spent substantial time analyzing fee data and other information from defendants before recommending the amount of the settlement. The Agreement provides payments to claimants that are more than three times their actual damages and anticipates a substantial amount will be paid into a *cy*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 23
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*pres* fund for the benefit of the class. From every angle, counsel believes this Settlement Agreement is an excellent result for class members. Youtz Decl., ¶6.

**7.    The presence of a governmental participant**

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, Defendants serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C §1715(b). Id. §1715(d). Defendants timely provided that notice on September 1, 2023, *see* Dkt. Nos. 215, 216, and 217.

After defendants provided their notice, Class counsel was contacted by the Attorney General's office for the state of Texas on behalf of itself and other attorney generals, requesting information regarding the notice process. That information was provided by Class counsel, which includes information regarding the process used to provide notice by the claims administrator. No further requests were received and no objection has been filed by any state to the settlement. Youtz Decl., ¶6.

**8.    The reaction of the Class members to the proposed settlement**

    *a.    Objections to the settlement.*

Two objections to the settlement were filed. The first was from class member Kevin Lawrence from Cordova, Tennessee, who filed his objection with the Court and Class counsel on November 15, 2023. Dkt. 223. He objects to the settlement generally because he thought the amount should be higher and the attorney's fees awarded should be less. Those concerns are addressed above in discussing the factors to be considered in approving the settlement. He also objects because of the "excessive length of time to reach this agreement," which actually supports an argument for quick approval. He further objects to the "defendants' lack of accepting liability," but that is to be expected

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 24
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

in any settlement agreement where the parties reach a compromise to resolve the case. He also believes he should receive additional compensation because he had to wait to receive a release card, which delayed his ability to use the money, for damage to his reputation with a new employer, and for "ongoing privacy concerns." Those claims/damages appear to be related to the circumstances of his arrest and release and cannot be addressed under the EFTA.

The second objection was a 28-page submission filed on December 4 – the last date for receiving objections – on behalf of Osvaldo Torres by the law firm of Thierman Buck LLP, who had previously filed a motion to intervene to oppose the motion for preliminary approval of the settlement. *See* Dkt. 195. That firm represents a class that brought claims under Nevada state law against defendants for release cards issued by facilities in Nevada (*Watkins v. Rapid Fin. Sols., Inc.*, No. 3:20-cv-00509-MMD-CSD, 2023 (D. Nev.) That submission argues that the Court should deny the motion for final approval. It re-characterizes (and mischaracterizes) both the amount of the settlement obtained for the class and the amount of damages the class could receive from a trial to argue that the $11.6 million settlement is "paltry." It further objects because the class representatives did not bring consumer protection act claims for all 46 states with facilities who issued release cards, with a class representative from each of those states, while not identifying any statute that would offer class members more damages than the payments of $15 plus three times the fees incurred that claimants will receive in this action. It also asserts that the attorney's fees requested are disproportionally high by again mischaracterizing and lowering the value of the settlement to claim that class counsel is actually seeking a fee award of 65% of the common fund rather than the one third requested by their motion. These objections were addressed above in more detail in the examination of factors supporting approval of the settlement agreement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 25
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

They also contend that parole officers–to the extent that there are any associated with the facilities in this case–should have been personally contacted for additional address information for potential class members. Even assuming a parole officer who monitors a class member for a short period of time even has this information from years ago, it is doubtful he or she would be authorized or even willing to release this information.

In general, the objector claims that the notice "purposely fails to divulge these critical facts any reasonable person reasonable person [sic] would consider material in making informed intelligent decision of whether to opt out or remain a member of class and be bound by final judgment," but does not identify what information is missing, other than to contend that each notice should have been "personalized" to include the amount of fees paid by the recipient of the notice. As explained in the Youtz declaration, that information cannot be accurately determined until a class member files a claim with additional information, including birthdates. Further, the objector has cited no case requiring the specific amount of the potential payment should be put in the notice.

No objections were received to the amounts requested for reimbursement of costs and expenses or the class contribution awards for the class representatives.

    **b. *Opt-out requests.***

14 opt-out requests were received. All were submitted through the case website.

### IV.  THE ATTORNEY FEES REQUESTED BY CLASS COUNSEL SHOULD BE GRANTED

For the reasons stated in Class counsel's motion for attorney's fees, Class counsel should be awarded one third of the full value of the settlement. As discussed above, this amount is not disproportionate to the benefit incurred by the class from the settlement and is consistent with the fees awarded in similar cases. The total settlement amount

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 26
[Case No. 3:17-cv-05848-BHS]

obtained is significantly higher than found in similar cases and an amount above the benchmark is appropriate.

### V. THE COSTS AND EXPENSES INCURRED SHOULD BE REIMBURSED

The costs and expenses requested were necessary for the prosecution of the case and the expenses incurred in providing the initial notice to class members and the second notices regarding the settlement.

### VI. THE CLASS CONTRIBUTION AWARDS SHOULD BE AWARDED

"An incentive award may be appropriate when a class representative will not gain any benefit beyond that they would receive as an ordinary class member." *Marshall v. Northrop Grumman Corp.*, 2020 U.S. Dist. LEXIS 177056, at *30-31 (C.D. Cal. Sep. 18, 2020) (citations omitted). Reichert and Moyer are not obtaining any benefit beyond what they receive as a member of the class. They should each receive an incentive award of $20,000. The court in *Marshall* compiled a list of class representative awards that show that this request is reasonable:

> Absent an incentive award, the Class representatives in this action will receive no relief beyond that available to Class members. The $25,000 requested incentive award for each of the six Class representatives is only 0.20% of the total settlement fund, and combined are only 1.2%.

> District courts within the Ninth Circuit have approved similar incentive awards. *Trujillo v. City of Ontario*, ($30,000 each to six class representatives); *Carlin v. Dairy America, Inc.*, ($45,000 each to four current class representatives); *Nitsch v. Dream Works Animation SKG Inc.*, ($90,000 each to three class representatives); *Pan v. Qualcomm Inc.*, ($50,000 each to seven class representatives).

*Id*. at *31 (citations omitted).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

## VII.  THE COURT SHOULD EXTEND THE DATE BY
## WHICH CLAIMS CAN BE FILED

Claims are still arriving and individuals are still finding the website for information and filing claims. We request that the Court extend the claims deadline to December 31. Class counsel believes that will not affect the amount of money that would be received by persons who submitted claims by the December 4 deadline.

## VIII. CONCLUSION

Plaintiffs, on behalf of the Class, respectfully request that the Court:

(a)    give final approval of the Settlement Agreement and its addendum;

(b)    authorize the disbursement of Settlement Funds to pay valid claims submitted by class members;

(c)    authorize the disbursement of Settlement Funds to pay the costs and expenses requested in class counsel's Motion for Attorney Fees,

(d)    authorize the disbursement of Settlement Funds to pay attorney's fees to class counsel;

(c)    authorize the disbursement of Settlement Funds to pay $20,000 each to class representative Reichert and class representative Moyer as contribution awards.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 28
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

Respectfully submitted: December 11, 2023.

*I certify that the foregoing contains 8,359 words, in compliance with the Local Civil Rules.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

    */s/ Chris R. Youtz*

Chris R. Youtz, WSBA #7786
Richard E. Spoonemore, WSBA #21833
Eleanor Hamburger, WSBA #26478
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: cyoutz@sylaw.com
       rspoonemore@sylaw.com
       ehamburger@sylaw.com
Attorneys for Plaintiffs/Class/Subclass

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND ALLOCATION OF SETTLEMENT – 29
[Case No. 3:17-cv-05848-BHS]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246