The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY REICHERT and GARY MOYER, both individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KEEFE COMMISSARY NETWORK, L.L.C. d/b/a ACCESS CORRECTIONS; RAPID INVESTMENTS, INC., d/b/a RAPID FINANCIAL SOLUTIONS, d/b/a ACCESS FREEDOM; and CACHE VALLEY BANK,<br><br>Defendants. | NO. 3:17-cv-05848-BHS<br><br>ORDER (1) FINALLY APPROVING SETTLEMENT AGREEMENT; (2) APPROVING DISBURSEMENTS PURSUANT TO SETTLEMENT AGREEMENT; (3) APPROVING PAYMENT OF ATTORNEY FEES, LITIGATION COSTS, NOTICE COSTS AND CASE CONTRIBUTION AWARDS; AND (4) ORDERING FINAL REPORT ON DISBURSEMENT OF QUALIFIED SETTLEMENT FUND<br><br>**FAIRNESS HEARING:**<br>**DECEMBER 18, 2024** |

## I. BACKGROUND

On September 8, 2023, this Court preliminarily approved a proposed Settlement Agreement between Plaintiffs Jeffrey Reichert and Gary Moyer ("Plaintiffs"), each on their own behalf and on behalf of the National Class (as defined in Dkt. No. 87, p. 6) and Washington State Subclass (as defined in Dkt. No. 87, pp. 6, 25) (collectively "Class") and Defendants Rapid Investments, Inc. and Cache Valley Bank (collectively "Defendants"). Dkt. No. 213. On September 22, 2023, the Court approved Kroll as the Notice and Claims

ORDER - 1

Administrator. Dkt. No. 220. In conjunction with that Order, the Court directed Kroll to (1) provide direct United States mailed short form or summary notice to those class members with valid addresses, or addresses that have been returned with a forwarding address; (2) provide email notice to those class members where emails are available; (3) provide telephone support in both English and Spanish; (4) implement a targeted Media Notice Plan using mail, email, online display, social impressions and/or cross-device targeting on desktop and mobile; (5) disseminate information to groups that it has identified as being able to reach potential class members; and (6) place ads in *Prison Legal News* and *Criminal Legal News*. Dkt. No. 220, ¶2. The Court further directed Kroll and/or class counsel to create and maintain a website that provides the information set forth in the Preliminary Approval Order and permits Class Members to make claims through a variety of methods. *Id*.

On October 11, 2023, Kroll commenced the mailing of 782,854 postcard notices in accordance with the approved notice procedures. Dkt. No. 233, ¶8. The initial mailing was completed on October 25, 2023. Dkt. No. 233, ¶8. Kroll has consistently forwarded returned notices where updated addresses were available. *Id*. at ¶¶9-10. Kroll also purchased a mailing list of approximately 25,000 organizations that serve and interact with the demographic of the Class. On November 6, 2023, Kroll mailed a summary notice to these organizations. *Id*. at ¶11.

Kroll also undertook a media notice plan designed to reach 85% of the Class, as approved in the order appointing it. Dkt. No. 233, ¶4. This included publication via online display banner advertising, Google keyword search advertising, and publication via social media through Facebook, Instagram and YouTube. *Id*. at ¶¶12-17.

Class counsel also established a settlement web page containing the Settlement Agreement, Notice, Claim Form Materials, and key filings in the litigation, including Plaintiffs' Motion for Approval of Attorney Fees, Litigation Costs, and Case Contribution Awards. Dkt. No. 232, ¶5. *See* www.releasecardsettlement.com. This

webpage also permitted Class members to file claims electronically. *Id.* at ¶¶6-7. Finally, Kroll placed advertisements in *Criminal Legal News* and *Prison Legal News*. Dkt. No. 233, ¶¶18-19.

The Order provided that Class members who wished to comment on or object to the proposed Settlement Agreement were required to do so by December 4, 2023. Class members were informed of their rights and of this deadline in the notices that were mailed to them and via links on the website. Dkt. No. 232, ¶¶5-7.

The Order further scheduled a final settlement hearing, which was held on December 18, 2023, to consider objections and comments by Class members and to determine whether the proposed Settlement Agreement is fair, reasonable, adequate, and should be approved by the Court.

## II. FINDINGS: THE STANDARDS FOR FINAL APPROVAL ARE MET

1. The parties have reached a Settlement Agreement that resolves the Class's claims against Defendants Rapid Financial Solutions and Cache Valley Bank. The $11,600,000 settlement was reached with the assistance of Lou Peterson, an experienced Seattle-based attorney and mediator. The Agreement and the Addendum are attached hereto.

2. The Settlement Agreement establishes a Qualified Settlement Fund that is funded by Defendants. Under the terms of the Settlement Agreement, this Fund will be used to pay claims submitted by Class members who incurred fees during the class period, attorney fees and litigation costs, notice costs, case contribution awards, notice costs, costs of claims administration, and taxes. Any funds not expended up to $11,000,000 will not revert to the Defendants but will be subject to a *cy pres* award to be considered in a subsequent order of this Court.

3. The Court's Order required Kroll to mail court-approved notices to Class members by mail. The notices informed Class members that they had an opportunity to

object or submit comments to the Court regarding the proposed Settlement Agreement and that they must do so in writing by December 4, 2023.

4.  Notices were mailed initially to approximately 782,854 Class members. Dkt. No. 233, ¶¶8-10. Returned notices were remailed where updated addresses were available. *Id*. at 10.

5.  Two objections were received: One from Kevin Lawrence that was submitted on November 15, 2023 (Dkt. No. 223) and one from Osvaldo Torres filed on December 4, 2023. These objections will be addressed below.

6.  In determining whether the settlement is fair and reasonable, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e). These standards have been met.

7.  *The Class was Adequately Represented*. Federal Rule of Civil Procedure 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." The Court finds that this requirement is met here. As described in class counsel's declaration (Dkt. Nos. 232 and 222) and in the

ORDER - 4

time records submitted by counsel in support of their fee application (Dkt. No. 222-1), class counsel and class representatives Reichert and Moyer have diligently and thoroughly litigated this case. Plaintiffs have had to resist three motions to compel them to arbitrate these claims, appeals of those motions, and extensive battles over class certification. Plaintiffs also obtained extensive public record discovery from hundreds of facilities to prepare this case for trial. Settlement was reached as cross-motions for summary judgment were about to be filed, but only after extensive negotiations. Both class representatives were found to be adequate when the class was certified, and nothing has changed to alter that conclusion. Objector Torres contends that Reichart and Moyer are inadequate class representatives because they did not file claims on his behalf under the Nevada consumer protection act or consumer protection act claims for class members living in the other 44 states. This objection is not well-taken. Objector Torres does not cite any authority requiring a class representative for a national class to raise additional state law claims that each of the members of the class might have in their respective states. Further, the fact that Reichert and Moyer brought a Washington Consumer Protection Act claim on behalf of the Washington subclass does not give them or the Washington subclass members any advantage over the other members of the national class. The settlement agreement provides that the Washington subclass members who participated in the *Keefe* settlement, who already received treble damages for the fees they paid, will receive an additional amount from this settlement only to the extent that it provides them with a $15 payment as well as treble damages. In other words, the Washington subclass participation will not result in more money for that group than individuals in the national class. Everyone receives the same recovery. And all claimants here will receive $15 plus three times their losses – a sum that is greater than would be obtained under Nevada law, as a court in Nevada pointed out. *Watkins v. Rapid Fin. Sols., Inc.*, No. 3:20-cv-00509-MMD-CSD, 2023 U.S. Dist. LEXIS 198984, at *5 (D. Nev. Nov. 3, 2023) ("But Plaintiffs have not shown how joining

the *Reichert* settlement would harm Nevada Class Members. The proposed settlement would pay class members three times the fees incurred on their release card plus 15 dollars. (ECF No. 83-1 at 11.) In contrast, the maximum recovery Plaintiffs may obtain at trial under Nevada law is treble damages, or three times the fees they incurred. (ECF No. 85 at 11.) It is unclear how paying each class member an additional 15 dollars constitutes a "reverse auction settlement" or would harm Nevada Class members. (*Id.* at 2.)").

8.  *The Settlement was Negotiated at Arm's Length*. Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." The Court finds that this requirement is met. The parties used a mediator to facilitate the settlement, which is an indication of an arm's-length transaction. Dkt. No. 232, ¶3. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 U.S. Dist. LEXIS 124202 at *6 (E.D. Pa. Sept. 13, 2016). The initial mediation session was unsuccessful, and the mediator and the parties continued negotiating and exchanging offers for more than five weeks. Dkt. No. 232, ¶3. As the detailed written terms of the settlement agreement were being negotiated, it was discovered that fee data received in discovery by plaintiffs was incomplete, and additional data was produced. *Id*. This resulted in further negotiations regarding how the settlement should be modified to account for the additional data. *Id*. Eventually, a resolution was reached that an additional $600,000 would be made available if necessary to reach the goal of providing claimants with an award of $15 plus three times their fees. *Id*. The agreement was finalized just as the parties' motions for summary judgment were about to be filed. These facts show that there was no collusion between the parties and that the agreement resulted from arm's-length negotiations.

9.  *The Relief Provided to the Class is More than Adequate*. Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate,

ORDER - 6

taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." The Courts finds this requirement is met as well.

   (1) *The Amount of the Settlement Shows Adequacy*. The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 188621, at *17 (S.D. Cal. Oct. 13, 2022). When the settlement provides cash, and not injunctive or other non-cash relief that has to be valued, the comparison is simple: compare the amount of the settlement to the estimated damages. Here, the actual damages for the class are approximately $29.4 million, which represents the gross revenues received by Defendants from the release cards. The settlement amount of $11.6 million is 39.5% of that amount. That is significantly higher than most class-action settlements. Objector Torres, however, argues that the settlement should be rejected, claiming it is actually only 5% of the class's damages claim. Objector Torres, however, improperly fails to include the entire $11.6 million settlement amount in his analysis and improperly quadruples the actual losses to arrive at his 5% recovery figure. The relevant figures to compare are the actual losses of $29.4 million and the actual recovery of $11.6 million. Also important is the amount that each claimant will receive. Here, all class claimants will receive $15 plus three times their actual losses. This is a remarkable recovery for claimants and is evidence that the amount is more than adequate.

   (2) *Costs, Risks, and Delay Supports Approval*. Release card litigation has a mixed history. A plaintiff in Oregon District Court brought claims under EFTA regarding release cards issued by a different vendor. Before the case could be

ORDER - 7

certified as a class action, it was dismissed on summary judgment and appealed. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567 (9th Cir. 2020). While the Ninth Circuit reversed that decision, there are still many legal issues pending because of the number of regulations involved in the case and the scope of liability for the different defendants. This case has spent substantial time in the Ninth Circuit, and whatever the result was at trial, it would have likely been appealed. Also, the Ninth Circuit declined to consider this Court's class certification decision, but that issue was hotly contested and could likely be raised on appeal. This case has also been extraordinarily expensive in terms of providing notice and processing claims. If the settlement is not approved, and the plaintiffs prevail at trial, additional noticing and claims administration will have to be performed at substantial additional cost. All in all, the uncertainty, time, and expense for a case that was filed more than six years ago strongly support approving the settlement.

(3) *The Method of Distribution Supports Approval*. As detailed in the declarations of Chris R. Youtz (Dkt. No. 232) and Kroll Managing Director Jeanne C. Finegan (Dkt. No. 233), extensive efforts have been made to provide notice through the mail, through a website established for the case, and through social media platforms under the direction of Kroll. A substantial effort has been made to make the submission of claims as painless as possible. The postcards mailed to class members from the addresses Kroll and class counsel were able to obtain include a return postcard that can be completed and mailed to submit a claim. Class members have the option of sending photographs of the completed claim form by email to a dedicated email address: releasecard@syalaw.com. To date, more than 8,000 claims have been filed through the website. Approximately 80% of the claims filed electronically have been submitted through mobile phones. The only information that a claimant needs to add to the pre-populated claim form is their birthdate, the name of at least one facility where they received a release card,

and the name they received the release card under if it is different than their current name. With that information, the fees they incurred for the cards can be calculated. Class counsel also responds to emails received directly at the dedicated email address and through the website with questions, including whether the release card they obtained is eligible for participation in the case.

(4) *Attorney's Fees are Reasonable*. Under Federal Rule of Civil Procedure 23(e), "district courts must now consider the terms of any proposed award of attorney's fees when determining whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(iii)." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021). Here, class counsel has requested one-third of the $11.6 settlement amount. This is addressed in more detail in this Order. Objector Torres claims that class counsel's fee request provides a "disproportionate distribution" and "raises major red flags with respect to the Settlement." Objection Torres does not properly compare the request to the award. Rather, to make his argument, he ignores the total amount of the settlement, stating that the class will receive approximately $6 million rather than the $11.6 million Defendants agreed to pay. He then says the $3.87 million fee request is 64% of the $6 million class members will receive, suggesting counsel is receiving 65% of the $6 million, leaving class members with only $2.13 million. He then mistakenly compares the 65% value to the Ninth Circuit benchmark of 25% and common range of 20% to 30%, failing to note that the benchmark used by the Ninth Circuit and other courts is based on "the entire common fund." *Hessefort v. Super Micro Comput., Inc.*, 2023 U.S. Dist. LEXIS 198353, at *21 (N.D. Cal. May 5, 2023). Further, Class counsel has made no agreement with Defendants regarding the amount of attorney's fees to be paid to class counsel. Objector Lawrence objected that "the proposed fees far exceed what is reasonable and justifiable in this case. The attorney's fees should be commensurate with the benefits obtained for the class and should not unduly

burden the class members who are already seeking fair resolution through this lawsuit." Dkt. No. 223 at 2. At oral argument, the Court explained its conclusion that a fee of $3,596,000.00 (31% of the settlement amount) is reasonable.

10.  *Class Members are Treated Equally*. Federal Rule of Civil Procedure 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Here, no class member receives preferential treatment or rights over another class member. The settlement agreement treats all class members the same. The settlement agreement provides that the Washington subclass members who participated in the *Keefe* settlement, who already received treble damages for the fees they paid, will receive an additional amount from this settlement only to the extent that it provides them with a $15 payment as well as treble damages. In other words, the Washington subclass participation will not result in more money for that group than individuals in the national class. Objector Torres contends that the national class members are not being treated fairly because they will have to release their state-related claims to participate in the settlement for the national class. However, "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country. Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). *See also Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) ("Even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of an action before it."). Thus, the Court has the authority to approve a settlement agreement that releases claims that are related to the facts in this case although not raised in this case. In addition, that is typical for

settlement agreements, where defendants seek full resolution of the claims. In addition, all claimants irrespective of the state in which they reside will receive $15 plus three times their actual loss -- more than treble damages.

11.  *The Agreement Should be Approved Under the Additional Ninth Circuit Factors.* Prior to the amendments to Rule 23(e), the Ninth Circuit had established criteria for determining whether a class-action settlement should be approved:

> We are required to determine whether the district court abused its discretion in balancing the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The courts continue to examine these standards as well as the standards contained in Rule 23(e). *See, Hessefort v. Super Micro Comput., Inc.*, 2023 U.S. Dist. LEXIS 198353, at *8-*10 (N.D. Cal. May 5, 2023). An examination of these criteria confirms that the settlement should be approved. Cases brought under EFTA are not clear-cut, particularly when they involve the unusual situation of prepaid debit cards issued to persons released from jail. Plainitffs have met with success in this case, and on appeal, but numerous issues would have remained without a settlement. This settlement will give finality and provide a substantial payment to claimants and a significant sum to *cy pres* to help address the unfair use of these cards to return money to persons being released from custody. In addition, the risk and expense of further litigation would have been high, and the settlement provides substantial compensation to the Class. There was significant discovery, and class counsel did not ride on the coattails of any governmental authority. Only two class members have objected, which suggests that the class is supportive of the agreement. Class counsel

highly recommends that the settlement be approved. Finally, it is significant that class members who make claims will get more than what could have been achieved if this matter had gone to trial. A recovery that is more than three times the amount of each claimant's actual loss is compelling evidence that the agreement should be approved.

### III.  CONCLUSIONS

12. Federal Rule of Civil Procedure 23(e) provides that "a class action shall not be dismissed or compromised without the approval of the court…." Compromise of class action litigation is encouraged and favored by public policy. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

13. A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery. *See, e.g., Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). The settlement here was reached after years of litigation and with the assistance of a Ninth Circuit mediator.

14. As noted in the Findings, *above*, the Court concludes that Federal Rule of Civil Procedure 23(e) is fully met here, and that final approval should be granted. In addition, the following additional factors were also considered and have been met here: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

1  15. The Court therefore finds that the Settlement Agreement is fair, reasonable, and adequate, is in the best interests of the Class, and should be finally approved. The objections are overruled.

### IV. ATTORNEY FEES

15. Class counsel requested an attorney's fee award equal to 31% of the settlement amount, or $3,596,000.00 This amount is above the Ninth Circuit benchmark of 25% of the settlement fund. Class counsel's requeset, however, is subject to several unique factors that the Court concludes demonstrate why a higher percentage award is appropriate in this case. Those factors include (1) the results of the settlement, (2) the level of risk involved in the litigation, and (3) and that the fee award is similar to fees awarded in similar litigation.

16. The amount of the settlement obtained by counsel on behalf of the class is outstanding. Each claimant will receive three times the amount of fees that the class member incurred from the release cards plus an additional payment of $15. This is more than class members would have received had the case proceeded to trial and was entirely successful. The Torres Objector's objection that the fees requested are 65% of the benefit received by class members is incorrect. Both the benchmark and the percentage applied here should apply to the entire settlement fund obtained for the class. This is a unique feature of this settlement and justifies the fee award. Also noteworthy, and unlike many other class actions, is that payment of the requested fees here will not reduce any class claimant's recovery. Even with class counsel's request, all claimants will still receive the full amount of their claims – claims that (as noted above) will pay more than they could have received after a successful trial.

17. The Defendants object that the fact that claimants will receive more money than they would have if successful at trial does not support an increase above the 25% benchmark. The case they cited in support of this argument is *Shelby v. Two Jinns, Inc.*,

ORDER - 13

No. CV 15-03794-AB (GJSx), 2017 U.S. Dist. LEXIS 206930, at *4 (C.D. Cal. Aug. 2, 2017). In that case, however, the parties agreed in the settlement agreement that the attorney fees award should be 25%; the amount of the award was not at issue. Further significant is the fact that in that case settlement was reached shortly after discovery was initiated and 16 months after the case was filed. As described above, this case did not settle quickly. Instead, the case was ready for trial only after substantial discovery and three trips to the Ninth Circuit Court of Appeals. The Court finds that the unique recovery here—more than could be obtained after a successful trial—justifies the fee award.

18. Contrary to the case cited by Defendants, this case was litigated for more than six years in this court and the Ninth Circuit Court of Appeals. The diligent discovery efforts made by class counsel included not only discovery requests to Defendants during the case but also record requests and public file searches and communications from more than 950 facilities where the cards were provided to class members.

19. Another important factor supporting the fee award is the unusual and enormous risk assumed by class counsel in pursuing this case. There were numerous indicators at the beginning of the litigation that the case would be difficult and risky, and because of risks that the arbitration agreements could be enforced, there was always the possibility that the case could come to a sudden end. In addition, instead of obtaining a settlement prior to class certification, as often happens in these cases, class counsel worked to obtain the maximum amount from the case by obtaining class certification first. The Defendants also attempted to appeal that order to the Ninth Circuit, which was denied. Because certification was obtained without a settlement agreement in place, class counsel had to incur the enormous expense of providing written and electronic notice to more than 2 million class members. As detailed in counsel's declaration, they assumed more than $1 million in personal and business debt to provide this notice and pursue this case. Class counsel would have lost that money is the case was not successful. And,

when the case was settled, they again advanced additional money to begin the claims and notice process. And even if a trial had been successful, it is highly likely that the Defendants would have appealed that decision, further forcing class counsel to carry a substantial financial burden to seek money for the class.

20. Finally, there were no objections to the hours spent by counsel or their rates by either Defendants or either of the objecting members, just the percentage requested.

21. Under all the circumstances presented in the case including those identified in class counsel's motion for attorney fees, the Court concludes that Class counsel should be paid a reasonable attorneys' fee of $3,596,000.00 from the Qualified Settlement Fund.

### V.   CLASS NOTICE AND ADMINISTRATIVE COSTS

22. Upon the occurrence of the conditions set forth in Section 2 of the Settlement Agreement, the Court authorizes the payment of claims administration costs/fees from the Qualified Settlement Fund to Kroll upon review and approval by class counsel and Defendants under Section 14.1.6 of the Agreement (contained in the Addendum). Additional costs related to claims administration and arbitration costs may be paid out of the Qualified Settlement Fund as they become due, as necessary under Section 14.1.6. Class counsel shall document and submit those invoices and payments in connection with class counsel's final report, described below.

### VI.   NOTICE AND LITIGATION COSTS

23. Class counsel is also entitled to payment of litigation costs and notice costs that it has advanced. As permitted by the Settlement Agreement, class counsel sought reimbursement of notice and litigation costs totaling $1,080,844.47. There was no objection to this request. Class counsel's request is granted, and the Court awards $1,080,844.47 in notice and litigation costs to class counsel to be paid from the Qualified

Settlement Fund. Class counsel may apply for additional notice and litigation costs to the extent additional sums are incurred and supported by a motion to the Court.

24.     Upon the occurrence of the conditions set forth in Section 2 of the Settlement Agreement, class counsel and/or Kroll is authorized to distribute attorney fees and notice and litigation costs from the Qualified Settlement Fund.

### VII.  CASE CONTRIBUTION AWARDS

25.     Plaintiff's counsel as recommended and requested each plaintiff receive a case contribution award of $11,000. The two class member objectors do not object to those payments but defendants do. Defendants' objections, Dkt. 226, are **OVERRULED**. The amount of $11,000 for each class representative is well within the range of awards made, particularly given the length of this case and their role throughout the litigation, for the reasons articulated in the Court's oral ruling. The Court authorizes the disbursement of these funds from the Qualified Settlement Fund. Upon the occurrence of the conditions set forth in Section 2 of the Settlement Agreement, Plaintiffs are awarded a case contribution award of $11,000 each, for a total of $22,000. The Court authorizes the disbursement of these funds from the Qualified Settlement Fund.

### VIII.  PAYMENTS TO CLASS MEMBERS

26.     Upon the occurrence of the conditions set forth in Section 2 of the Settlement Agreement, class counsel and/or Kroll is directed to pay the valid claims filed by Class members. The Court authorizes the disbursement of these funds from the Qualified Settlement Fund. Class members must negotiate their checks within 90 days of issuance. Class counsel may extend this deadline, provided those payments do not implicate the $600,000 reserve fund agreed to by Defendants unless the Defendants expressly approve. Class counsel and Kroll are authorized to issue replacement checks for lost checks without further approval of the Court.

### IX.  CLASS COUNSEL'S FINAL REPORT AND DISMISSAL

27. Class counsel shall submit a final report to the Court regarding claims processing and disbursement of funds from the Qualified Settlement Fund by no later than 30 days after all valid claims, including any late claims, have been paid. The report shall detail the payment of court-awarded attorney fees, costs, expenses, case contribution awards, costs of notice/administration, payment of Class member claims, taxes, and a "holdback amount" necessary to complete the activities of and close the Qualified Settlement Fund. At the same time, class counsel shall file a proposed Order of Dismissal which shall dismiss the Class's claims against Defendant with prejudice and without an award of costs or fees other than as provided under the Settlement Agreement and that identifies and excludes from the judgment any Class member who chose to opt out.

### X.  DISPOSITION OF SURPLUS FUNDS

28. In the event that surplus funds still remain after the payments approved herein, class counsel shall propose a *cy pres* distribution to the Court for consideration.

### XI.  ORDER

It is hereby ORDERED that:

1. The Settlement Agreement is approved as fair, reasonable, and adequate under Fed. R. Civ. P. 23, and its terms shall bind class members, except any members who timely opted out. Plaintiffs' motion for final approval, Dkt. 231, is **GRANTED**.

2. Class counsel is awarded attorney fees, litigation costs, and reimbursement of costs of notice and administration, as set forth above. These amounts are authorized and directed to be paid to class counsel from the Qualified Settlement Fund. Plaintiffs' motion for attorneys' fees, Dkt. 221, is **GRANTED**.

3. Class counsel and/or Kroll is also authorized to distribute checks to class members and the Plaintiffs in accordance with the Settlement Agreement and this Order. These amounts are authorized to be paid from the Qualified Settlement Fund.

4. Case contribution awards of $11,000 to each Plaintiff, totaling $22,000, is approved, and class counsel and/or Kroll is authorized to distribute that sum from the Qualified Settlement Fund.

5. Class counsel and/or Kroll is authorized to pay the continuing costs of claims administration and class notice from the Qualified Settlement Fund. Class counsel and/or Kroll shall document each such payment in a final report and submit it for the Court's final approval.

6. Class counsel is ordered to submit a final report in accordance with the Settlement Agreement and this Order.

9. The Court shall retain jurisdiction over this matter until the Qualified Settlement Fund is closed and an Order of Dismissal is entered.

It is so ORDERED this 19th day of December, 2023.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 18